Maggie Pearl HOLCHAK, Appellant,

v.

Edwin T. CLARK, Appellee.

No. 12854.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 26, 1955.

Rehearing Denied Nov. 30, 1955.

———◆———

John N. Barnhart, Reese Wade, Beeville, for appellant.

Reynolds N. Cate, San Antonio, for appellee.

NORVELL, Justice.

This being the second appeal of this cause, we refer to our former opinion, Clark v. Holchak, Tex.Civ.App., 247 S.W. 2d 463, and that of the Supreme Court, Clark v. Holchak, 152 Tex. 26, 254 S.W.2d 101, for a more complete statement of the case.

The limitation or condition of defeasance contained in the habendum clause of the royalty deed reads as follows:

"It is further agreed and herein stipulated that in case there is no paying production on said land on Decem-ber 10, 1945, and for six months there-after, that this grant shall become null and void, and the minerals hereby conveyed shall revert to the said Gran-tor, their heirs and assigns, but should there be such production, then and in that event, this grant shall remain in full force and effect until such produc-tion ceases, after which this instrument shall become null and void."

Upon the former appeal, the Supreme Court held that the mineral estate conveyed by the deed would not terminate unless for a six months period following December 10, 1945, there should be an absence of pay-ing production. The question presented by the record now before us is that expressly pretermitted by the Supreme Court, that is, "whether or not there was paying produc-tion from the land within six months after December 10, 1945," i. e., on June 10, 1946.

■ The answer to this inquiry is, or should be, simple of solution. Paying pro-duction undoubtedly means the production of oil, gas or other minerals from the prem-ises in paying quantities. Mr. Leslie D. Harlowe, a practicing oil geologist and witness for the appellee, testified categori-cally that on or before June 10, 1946, there was no production from the well situated on the premises covered by the royalty deed. This testimony was uncontradicted and should end the matter, as the defeasance clause provides "that in case there is no paying production on said land on Decem-ber 10, 1945, and for six months thereafter (June 10, 1946), that this grant shall be-come null and void, and the minerals here-by conveyed shall revert to the said Gran-tor, their heirs and assigns, * * *."

The trial judge, however, did not con-strue the word "production" as having the same meaning as that accorded to it by the oil geologist, nor did he construe the phrase "paying production" according to its com-mon ordinary meaning, but gave it a much broader and more inclusive construction. This is apparent from the findings of fact and conclusions of law filed at appellant's request. From the findings it appears that on June 9, 1946, between the hours of mid-

night and 8 A.M., a drill stem test was run in the well at the depth of approximately 4266 feet, and some 200 feet of pipe line oil and 180 feet of oily mud was recovered. Some of the oil was placed in a small bottle and the balance was run into the slush pits. Drilling was thereafter resumed and the well finally completed on July 14, 1946, at a depth of 7640 feet. Other than that recovered in the drill stem test of June 9, 1946, no oil was taken from the 4266 foot depth. The trial judge concluded as a matter of law that, "Said discovery of oil on June 9, 1946, kept said royalty deed in full force and effect until a reasonable time thereafter for the purpose of determining whether or not said well would produce oil in paying quantities."

The royalty deed, in the defeasance clause or elsewhere, does not provide that the discovery of oil, followed by the completion of a well within a reasonable time thereafter, shall operate to extend the term of the grant beyond June 10, 1946, the date set for termination unless paying production was obtained. The trial court's position, however, has support in the authorities. The doctrine that the discovery of oil within the definite term, followed by diligent operations thereafter, will extend the term of the lease or deed containing a "paying production" habendum clause, seems to have first been propounded by the Supreme Court of West Virginia. In Eastern Oil Co. v. Coulehan, 65 W.Va. 531, 64 S.E. 836, 839, the West Virginia Court seemingly proceeds upon the theory that the *discovery* of oil, gas or other minerals *vests* the lessee or grantee "with an estate in the right to produce oil and gas," and that this estate or right is not lost by abandonment or otherwise so long as operations are diligently continued after the expiration of the definite term and production is eventually obtained.

In construing the habendum clause in South Penn Oil Co. v. Snodgrass, 71 W.Va. 438, 76 S.E. 961, 967, 43 L.R.A.,N.S., 848, the Court said:

"May we not, therefore, say the qualifying clause 'as oil or gas is produced' really means 'as long as the premises are diligently and efficiently operated, providing minerals shall have been discovered within the fixed term'? Which construction harmonizes the more completely and naturally with the manifest purposes of the parties as indicated by the other provisions of the lease, their situation, and the surrounding circumstances?"

In a dissenting opinion, it was said that the majority of the Court "makes the contract between the parties to be other than that which they must have contemplated when the lease was executed."

In our opinion, the view expressed in the dissent is correct. One can not say that discovery of oil followed by diligent operations is the equivalent to production of oil and gas in paying quantities, without doing violence to the plain meaning of words in common use among English speaking peoples. Production has a commercial connotation. It means marketable oil or gas. Garcia v. King, 139 Tex. 578, 164 S.W.2d 509. All the record shows here is a favorable drill stem test within the definite term, followed by the completion of a producing well in another sand after the definite term had expired. A favorable test for oil or gas, coupled with a strong indication that the well may at some future day become a producer, is not the same as having a producing well. Numerous accidents, unforeseen happenings and the like may intervene between discovery and production. Had the parties desired a provision which would allow the term of the deed to be extended by a discovery of oil within the definite term, followed by diligent operations thereafter, they could have expressly so provided. As said by the United States District Court for the Eastern District of Oklahoma in Wickham v. Skelly Oil Co., 106 F.Supp. 61, 69, affirmed Skelly Oil Co. v. Wickham, 10 Cir., 202 F.2d 442: "No court will rewrite or reform a contract for the parties in the absence of fraud or mutual mistake, therefore, this court will not rewrite the lease contract for the parties and in effect substitute a re-

402

formed contract for them to include something which is not present in the lease as made. To do so would be to construe a simple 'well completion clause' to have the meaning of a 'continuous drilling clause' or a 'continuous development or operation clause'." Continuous operation clauses are usual in oil, gas and mineral leases and royalty conveyances. Rogers v. Osborn, 152 Tex. 540, 261 S.W.2d 311. It is not necessary that courts supply them.

We are aware of the circumstance that the West Virginia cases mentioned have been cited with approval in certain Texas decisions, and that other opinions have in substance stated the holding of the Snodgrass case, i. e., that discovery of minerals within the definite term, followed by diligent operations thereafter, is the equivalent of producing oil, gas or other minerals in paying quantities. Such cases are Texas Pacific Coal & Oil Co. v. Bratton, Tex. Civ.App., 239 S.W. 688; Scarborough v. New Domain Oil & Gas Co., Tex.Civ.App., 276 S.W. 331; Bouldin v. Gulf Production Co., Tex.Civ.App., 5 S.W.2d 1019, and Bain v. Strance, Tex.Civ.App., 256 S.W.2d 208. Upon examination, however, it appears that such statements were unnecessary to a decision of the particular case and hence are dicta. So far as we have been able to ascertain, the Supreme Court of Texas has never approved the West Virginia rule. In our opinion such rule is unsound in law and we decline to follow it. The words "discovered" and "production" do not mean the same thing. Morrison v. Swaim, Tex.Civ.App., 220 S.W.2d 493.

The West Virginia rule of Eastern Oil Co. v. Coulehan, 65 W.Va. 531, 64 S.E. 836, and South Penn Oil Co. v. Snodgrass, 71 W.Va. 438, 76 S.E. 961, 43 L.R.A.,N.S., 848, is fully discussed and pronounced unsound by Summers in his work on Oil & Gas, § 300; by Walker in "The Nature of the Property Interests Created by an Oil and Gas Lease in Texas," 8 Texas Law Review 483, l.c. 518, and by Veasey in "The Law of Oil and Gas," 19 Michigan Law Review 161, l.c. 182, wherein it was said that, "This decision (in the Snodgrass case) is contrary to the overwhelming weight of authority on the question. Moreover, it is utterly unsound in principle."

As there was no paying production from the premises covered by the royalty deed on June 10, 1946, the mineral estate reverted to the grantors of the deed, their heirs and assigns. The judgment of the trial court is accordingly reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.