**MIDWEST OIL CORPORATION, R. F. Scheig and Sally Scheig Simons, Appellants,**

v.

**Weldon O. WINSAUER et al., Appellees.**

No. 3389.

Court of Civil Appeals of Texas.

Eastland.

June 6, 1958.

Supplemental Opinion Aug. 1, 1958.

Rehearing Denied Sept. 5, 1958.

W. Scott Clark, Ft. Worth, for appellant.

W. B. Moss, Sinton, Reese D. Wade, Beeville, Perkins, Floyd & Davis, Alice, for appellees.

WALTER, Justice.

This is an appeal from an order in a declaratory judgment suit wherein the plaintiff, R. F. Scheig, Sally Scheig Simons and husband, C. B. Simons, and Midwest Oil Corporation, sought an adjudication that their term royalty in 575 acres of land in San Patricio County was in full force and effect. The defendants, Weldon Winsauer, J. P. Pruett and wife, Nellie F. Pruett, J. W. Crouch and wife, Mary Crouch, Crouch Dairies, Inc., Reese Wade, W. B. Moss, owned the fee and the term royalty reversion and contended that the

term royalty had terminated. The defendant, Gas Gathering Company, was purchasing gas from the property in dispute. The trial was before the court without a jury and resulted in a judgment for the defendants.

 The plaintiff, Midwest Oil Corporation, has appealed from said judgment, without a statement of the points upon which its appeal is predicated as provided for under Rule 418. It predicates its appeal on what it designates as "legal propositions" which are as follows: "(1) rights are suspended during and for a reasonable time after litigation (2) term royalty not affected by temporary interruption of this nature." We hold that these "legal propositions", when considered in connection with the statement and argument thereunder, sufficiently point out the error complained of, and we shall consider them. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478.

The term royalty deed under which appellant claims was dated March 6, 1940, and provides:

> "This grant shall run, and the rights, title and privileges hereby granted shall extend to grantee herein, and to Grantee's heirs, administrators, executors and assigns for a period of fifteen (15) years from date hereof *and as long thereafter as oil, gas or other minerals, or either of them is produced or mined from the lands described herein, in paying or commercial quantities.*"

The facts are undisputed as they were stipulated by the parties and may be summarized as follows: that the basic term of appellant's royalty deed expired on March 6, 1955, but that production from Ross-Singleton No. 1 well located on the subject property is recognized as having extended the life of the term royalty deed until cessation of production from said well on December 21, 1955. In another stipulation the date of the cessation of production from this well is stated to be December 23, 1955; that production was thereafter, that is on or about June 14, 1956, restored in said Ross-Singleton well No. 1, but there had been no production therefrom in paying or commercial quantities during the interim from December, 1955, until June 14, 1956; that suit was filed by all the appellees herein, except Wade and Moss, against Woodson Oil Company et al. to cancel the oil and gas lease on the subject land and the jury found that the Ross-Singleton well No. 1 ceased producing gas on December 14, 1952, and that such cessation of production continued for sixty consecutive days thereafter and the court entered judgment terminating the lease as of February 13, 1953. See Woodson Oil Co. v. Pruett, Tex.Civ.App., 281 S.W.2d 159. It was further stipulated that the Ross-Singleton well No. 1 continued to produce gas in paying quantities for the purpose of the court's construction of the royalty deed here involved until the 21st of December, 1955, on which date Woodson's motion for rehearing on its application for writ of error was overruled by the Supreme Court; that after the first case was finally determined, Woodson et al. asserted the right under its former lease to pull and plug the well; that Woodson et al. filed suit against Pruett et al. asserting such right; that on February 24, 1956, a temporary injunction was granted in favor of Woodson and against Pruett et al. enjoining them from interfering with the equipment; that a judgment was entered in the trial court in said case on April 23, 1956, that the title to the equipment in and attached to the Ross-Singleton well No. 1 was the property of Woodson et al., but denied them the right to remove parts of the equipment pending certain payments and conditions; that Pruett installed the necessary equipment on the Ross-Singleton well No. 1 and on or about June 14, 1956, production in commercial quantities was resumed and continued to the time of the trial of the case at bar; that Winsauer et al. commenced the drilling of another

well at another location on the subject land which was a producer and was actually put on production on April 6, 1956.

It was further stipulated that there was no *lack of diligence or good faith* on the part of the appellees in obtaining a final adjudication of the rights of the parties in the case which was filed by appellees against Woodson et al. to cancel the lease; that there was no lack of diligence or lack of good faith on the part of the appellees in obtaining or restoring production from the land described in the term royalty deed; that Winsauer et al. spent $22,909.83 on the well which they drilled on the subject property; that Pruett spent $4,438.55 for necessary equipment on the Ross-Singleton well No. 1 after the cessation of production.

No findings of fact or conclusions of law were requested or filed by the trial court. It is said by our Supreme Court in Renfro Drug Co. v. H. L. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613, 23 A.L.R.2d 1114:

"No findings of fact or conclusions of law were requested of or filed by the trial judge. The trial court's judgment, therefore, implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto 'it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.' Austin v. Cochran, Tex.Com.App., 2 S.W.2d 831, 832; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696."

The stipulated and uncontroverted facts reveal the term royalty deed under which the appellant claims title to the subject royalty expired by its own terms with the cessation of production from Ross-Singleton well No. 1 in December, 1955.

We are to determine the meaning of the provision in the term royalty deed which is as follows:

"* * * and as long thereafter as oil, gas or other minerals, or either of them is produced or mined from the lands described herein, in paying or commercial quantities."

In Reynolds v. McMan Oil & Gas Co., Tex. Com.App., 11 S.W.2d 778, 781, the court said:

"First, of course, in construing a deed, like any other contract, the intention of the parties is of primary and controlling importance. Where the contract is unambiguous, this intention must be determined from the instrument itself, considering all its parts in their proper bearing. If the terms of the instrument give it a definite legal effect, the inquiry is concluded, and no intention, however discovered, can contradict or destroy the legal effect of the terms used."

The appellant and the grantors in the term royalty deed could have agreed and incorporated in said deed a provision that so long as any unproduced oil or gas that had been discovered prior to the expiration of the term provided for in the royalty deed, their rights under said deed would continue. Said parties could have agreed on a provision that after the discovery of oil or gas in paying quantities, if production continued without cessation of more than six months, their rights under the royalty deed would continue in full force and effect. But said parties did not so contract, and this court cannot by judicial interpretation rewrite the deed for the parties and incorporate therein provisions not expressly or impliedly provided for therein.

We are aware of the possibilities of fraud that might result from the connivance of a lessee and the owner of a reversionary interest to wipe out the rights

of persons holding under a term royalty deed. The appellants' pleadings might be sufficient to grant appropriate relief, but when the appellant stipulated there was no lack of diligence or lack of good faith on the part of any of the appellees in obtaining or restoring production from the lands and premises involved in such royalty deed, it stipulated itself out of court. Even in the absence of such stipulation this court can see no evidence of fraud on the part of appellees, furthermore, the Court of Civil Appeals in Woodson Oil Co. v. Pruett, 281 S.W.2d 159 (RNRE), in effect, decreed that the appellees herein acted in good faith by holding that they were entitled to have the oil and gas lease cancelled. In the case of Holchak v. Clark, Tex.Civ.App., 284 S.W.2d 399, 401 (Writ Ref.), Judge Norvell, speaking for the court, in construing the limitation or condition of defeasance contained in the habendum clause of a royalty deed said:

"Had the parties desired a provision which would allow the term of the deed to be extended by a discovery of oil within the definite term, followed by diligent operations thereafter, they could have expressly so provided. As said by the United States District Court for the Eastern District of Oklahoma in Wickham v. Skelly Oil Co., 106 F.Supp. 61, 69, affirmed, Skelly Oil Co. v. Wickham, 10 Cir., 202 F.2d 442: 'No court will rewrite or reform a contract for the parties in the absence of fraud or mutual mistake, therefore, this court will not rewrite the lease contract for the parties and in effect substitute a reformed contract for them to include something which is not present in the lease as made.' "

and again on page 402:

"As there was no paying production from the premises covered by the royalty deed on June 10, 1946, the mineral estate reverted to the grantors of the deed, their heirs and assigns."

In another case by the San Antonio Court, Sellers v. Breidenbach, Tex.Civ.App., 300 S.W.2d 178, 179 (Writ Ref.), Chief Justice Murray, speaking for the court, in construing a similar provision in a royalty deed as that involved in the case of Holchak v. Clark, supra, said:

"This is the same provision that this Court was called upon to construe in Holchak v. Clark, Tex.Civ.App., 284 S.W.2d 399, 400. In that case Justice Norvell, speaking for this Court said: 'Paying production undoubtedly means the production of oil, gas or other minerals from the premises in paying quantities.' "

We have carefully considered appellant's two points of error and find no merit in them and they are accordingly overruled.

The judgment of the trial court is affirmed.

### Supplemental Opinion

The appellants R. F. Scheig and Sally Scheig Simons having filed a motion to amend the appeal bond and same having been considered and granted and said amended appeal bond having been duly filed, our opinion dated June 6, 1958, in this case is amended to show that R. F. Scheig and Sally Scheig Simons properly appealed from the trial Court's judgment. Where we used the word appellant in the original opinion, it shall be considered that the opinion is referring to and including not only the Midwest Oil Corporation but also the other appellants Sally Scheig Simons and R. F. Scheig.