MIDWEST OIL CORP. ET AL V. WELDON O. WINSAUER ET AL.

No. A-7029. Decided April 15, 1959.
Rehearing overruled May 27, 1959.
(323 S.W. 2d Series 944)

*W. Scott Clark,* of Fort Worth, for petitioners.

The Court of Civil Appeals erred in construing the term royalties as having lapsed under their own term when production was temporarily interrupted, and in not holding that a temporary cessation following litigation between the parties was permissible to allow restoration of the parties to their original status before the law suit arose. Harris v. Winsor, 156 Texas 314, 294 S.W. 2d 798; Sun Oil Co. v. Burns, 125 Texas 549, 84 S.W. 2d 442; Miller v. Hodges, (Com. App.) 260 S.W. 168.

*Perkins, Floyd & Davis* and *Carmel F. Davis,* of Alice, *Wade & Wade,* of Beeville, and *W. B. Moss,* of Sinton, for respondents.

In response to petitioners points of error cited Holchak, 284 S.W. 2d 399, writ refused; Sellars v. Briedenbach, 300 S.W. 2d 178; Adams v. Cannan, 253 S.W. 2d 948.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit was instituted by petitioners, R. F. Scheig, Sally Scheig Simons and husband, C. B. Simons, and Midwest Oil Corporation against Weldon O. Winsauer, J. P .Pruett and wife, Nellie F. Pruett, J. W. Crouch and wife, Mary Crouch, Crouch Dairies, Inc., Reese Wade, W. B. Moss, and Gas Gathering Co., seeking a declaratory judgment that their 15-year term royalty had not expired.

The term royalty deed, dated March 16, 1940, contained a provision that the grant and the rights, title, and privileges granted should extend for a period of fifteen years from date and so long thereafter as oil, gas, or other minerals, or either of them, was produced in paying or commercial quantities. The facts were stipulated. The parties will hereafter be designated as plaintiffs or defendants as in the trial court.

The trial court, without the aid of a jury, rendered a judgment (1) that plaintiffs take nothing by their suit; (2) that the royalty deed, under which the plaintiffs' claim, had "lapsed and that said plaintiffs' rights thereunder have terminated and such conveyance is hereby adjudicated to be of no further force or effect and cancelled;" (3) that the title and possession of two tracts consisting of 124 acres and 143.66 acres, be divested out

of plaintiffs, and awarded to defendants, J. P. Pruett and Nellie F. Pruett; (4) that the title and "possession, formerly held by plaintiffs under and by virtue of such instrument in and to Third tract of 157.9 acres and 100.3 acres out of Fourth tract, described in such royalty deed, and being 258.2 acres * * * is hereby divested out of plaintiffs, and awarded to defendant Weldon O. Winsauer;" (5) that the title to a certain 50 acres described in a deed, dated September 28, 1951, be divested out of plaintiffs, and awarded to defendants, J. W. Crouch and wife, Mary Crouch, and Mary Crouch Dairies, Inc., (6) that all sums accruing from production from the Ross-Singleton No. 1 well and deposited in the registry of the court by defendant, Gas Gathering Company, or other purchasers, were the property of J. P. Pruett and such sum of money was ordered paid to Pruett, together with all sums accruing from such production; (7) that defendant, Winsauer, should receive all sums of money accrued and to accrue from the Winsauer No. 1 well and the Winsauer No. 2 well. The Court of Civil Appeals has affirmed the judgment of the trial court. 315 S.W. 2d 608.

It was stipulated that there was continuous production in paying or commercial quantities from the Ross-Singleton No. 1 well up until December 25, 1955. The question we have for decision is whether the cessation of production from such well due to litigation and mechanical breakdowns terminated the term royalty deed. We have concluded that as a matter of law the stipulated facts are conclusive and permit of only one construction, which is that the cessation of production was temporary, and that such temporary cessation was due to the litigation in two lawsuits between the defendants and a lessee named Woodson, causing the shutdown of the Ross-Singleton No. 1 well, and mechanical breakdowns. This litigation ended in a judgment against Woodson. That judgment became final in December 1955 when this Court overruled Woodson's motion for rehearing of his application for writ of error. Woodson Oil Company et al. J. P. Pruett et al, Texas Civ. App.; 281 S.W. 2d 159, wr. ref. n.r.e. At the time Woodson's rights in the land ceased, the Woodson No. 1 well was producing in paying quantities. Woodson, however, shut the well down and filed a second suit immediately after his rights were terminated by court decree, and obtained an injunction restraining the defendant, Pruett, from using his (Woodson's) equipment to produce gas from the well. This second lawsuit between Pruett and Woodson terminated and Woodson was required to leave the casing in the hole. Woodson was awarded judgment for his other equipment. There was an ordinary foreseeable interruption as Woodson ceased to op-

erate the well and Pruett took over. Pruett diligently went about securing other equipment. A new gas line was caused to be laid. An "obstruction" was discovered in the gas line, and it was not until June 14, 1956 that production in paying or commercial quantities was restored. The parties stipulated that the Woodson-Pruett suit was prosecuted with diligence and that there was no lack of good faith on the part of any of the defendants in obtaining a final adjudication of said cause. The defendant, Pruett, was a fee owner and also an operator. The same is true as to the defendant, Winsauer. The evidence is clear that but for the fact that Woodson shut the well down and refused to allow Pruett to use the equipment, the Ross-Singleton No. 1 well would not have ceased producing. It was stipulated that there was no lack of diligence on the part of any of the parties.

No evidence was offered other than the stipulations of the parties. Other stipulated facts appear in the record, but we believe the facts recited above are the material facts so far as a determination of the question here involved is concerned.

It is the position of plaintiffs that whether or not the estate granted by the royalty deed for a term of fifteen years and as long thereafter as oil, gas, or other minerals is produced in paying or commercial quantities has terminated, depends upon the surrounding facts and circumstances in each case, and that the facts in this case clearly show as a matter of law that the temporary cessation of production in paying quantities from the Ross-Singleton Well No. 1 for a period of 174 days was such a cessation of production as was reasonably within the contemplation of the parties to the term royalty deed, and do not warrant a termination of the estate granted by the term royalty deed.

Although the royalty deed under consideration does not expressly provide that the term royalty will not terminate because of temporary interruptions, we hold that such a provision is necessarily implied. The purpose of the deed was to effect a conditional or term grant for a period of fifteen years, and as long thereafter as oil, gas or other minerals, or either of them, should be produced or mined from the lands in paying or commercial quantities. The respondents contend that the petitioners are bound by the express terms of the contract, and that when cessation of production has been established by the evidence to have been continuous for the period involved, the contract term expired by its own terms, and that it matters not whether the Ross-Singleton No. 1 well was capable of producing during

that time, where, as here, there was no lack of diligence or lack of good faith on the part of any of the respondents in obtaining or restoring production. Respondents contend that there is no provision expressed in the royalty contract nor is a provision to be implied which would allow for its continuation in view of the stipulated facts that production in paying or commercial quantities had in fact ceased on December 23, 1955. With this contention we do not agree.

The exact question we are called upon to answer has never been presented to an appellate court of this jurisdiction, but we believe that the reasoning contained in cases wherein oil and gas leases which were effective for a term certain and so long thereafter as oil, gas, or other minerals were involved, is applicable and leads to the conclusion that a temporary cessation of production in paying or commercial quantities will not cause the royalty deed to terminate. See Watson v. Rochmill, 137 Texas 565, 155 S.W. 2d 783; Morrison v. Swaim, Texas Civ. App., 220 S.W. 2d 493, wr. ref., n.r.e.; Union Oil Company of California v. Ogden, Texas Civ. App., 278 S.W. 2d 246, wr. ref., n.r.e.; Gulek v. Humble Oil & Refining Company, Texas Civ. App., 126 S.W. 2d 38, no writ history; Scarborough et al v. New Domain Oil & Gas Co. et al., Texas Civ. App. 276 S.W. 331, wr. dism., w.o.j.

The case of Scarborough et al. v. New Domain Oil & Gas Co., supra, was one where production in paying quantities was interrupted from March 23, 1920 until July 2, 1920. The gas well was brought in during the primary term, and produced gas in paying quantities after the expiration of the 5-year primary term and until March 23, 1920, when, by reason of the casing in the well collapsing, gas production ceased. The lessees, in good faith, made a diligent effort and spent much money endeavoring to resume gas production, but without success. On July 2, 1920, "an oil well, commenced before the gas well ceased production, was brought in, and, since the 2d day of July, 1920, oil has been produced in paying quantities. Also another gas well was later brought in and has since produced gas in paying quantities." The court held that these facts did not present cause for the cancellation of the lease. The court laid down the rule that where oil or gas is produced in paying quantities within the primary term of an oil and gas lease, and the cause of cessation of production was thereafter necessarily unforeseen and unavoidable, and where the lessees in good faith used reasonable diligence to resume production, and at great outlay of money, and did, within a reasonable time, in view of the condi-

tions disclosed by the record, resume production, the estate did not terminate, as as matter of law, because of temporary cessation of production.

In the case of Watson v. Rochmill, supra, this Court said:

"It appears to be very well settled that under the terms of the lease, upon cessation of production after termination of the primary term, the lease automatically terminated. W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S.W. 2d 27. The strictness of the above rule has been modified where there is only a temporary cessation of production due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like. Under such circumstances there are authorities which hold that the lessee is entitled to a reasonable time in which to remedy the defect and resume production. Scarborough v. New Domain Oil & Gas Co., Texas Civ. App., 276 S.W. 331; Texas Pacific Coal & Oil Co. v. Bratton, Texas Civ. App., 239 S.W. 688. * * *."

We find cases in other jurisdictions which we deem to be more directly in point. See Beatty v. Baxter, (Okla.) 258 Pac. 2d 626, and Postier v. Postier, (Okla.) 296 Pac. 2d 138; Wilson v. Holm, 164 Kan. 229, 188 Pac. 2d 899; Wagoner v. Sunray-Mid-Continent Oil Co. (Kan. Supp.), 182 Kan. 81, 318 Pac. 2d 1039.

The case of Beatty v. Baxter, supra, involved the construction of a term royalty deed which was limited by provision of the habendum clause to a period of twenty years and as long thereafter as oil or gas was produced from the premsies. The court held that the title to an undivided interest in the oil and gas was not terminated by a temporary cessation of production, after the expiration of the primary term, where such cessation was to enable a rehabilitation of the only producing well on the premises. In that case, twenty-one months had expired, but the court held that under all the surrounding facts and circumstances production was never abandoned, but that the cessation of paying production was merely temporary, and was not for such duration as not to be productive in paying or commercial quantities.

In the case of Postier v. Postier, supra, the Supreme Court of Oklahoma held that the cessation of production in a gas well for four and one-half months, which was due to the well being clogged by fluid, amounted to only a temporary cessation, and

that under all the facts and circumstances the estate granted by the royalty deed did not terminate.

In the case of Wilson v. Holm, supra, the mineral deed provided that it should be for a term of fifteen years and as long thereafter as oil or gas, or both, were produced in paying quantities. The only well was shut in on November 30, 1945, and produced no oil, except a trace, until January 27, 1947, which was the result of a rework job by a new operator after the well had been abandoned by the former operator. The Supreme Court of Kansas, after stating that no case in point could be found in any jurisdiction, affirmed the judgment of the trial court that the lease had expired through permanent cessation of production, but in its opinion said:

"However, it is also true that a mere temporary cessation of production because of necessary developments or operation do not result in the termination of such a lease or the extinguishment of rights acquired under its terms. See preceding citations, also Wisconsin-Texas Oil Co. v. Clutter, Texas Comm., App., 268 S.W. 921; Watson v. Rochmill, 137 Texas 565, 155 S.W. 2d 783, 137 A.L.R. 1032; 43 L.R.A., N.S., note 848; 24 Am. Jur. 571, 586, Secs. 63 and 77.

"Although the Texas decisions to which we have just referred deal with oil and gas leases their importance in the case at bar becomes particularly significant when it is pointed out that in that state (see, 10 Thompson on Real Property, Permanent Ed., page 623, Sec. 5573; Stephens County v. Mid-Kansas Oil and Gas Co., 113 Texas 160, 254 S.W. 290, 29 A.L.R. 566; Scarborough v. New Domain Oil & Gas Co., Texas Civ. App., 276 S.W. 331), such leases are held to create an estate in land in the nature of a base or determinable fee."

We see no reason why the same general principles of law governing the construction of oil and gas leases containing habendum clauses, providing the estate conveyed shall continue after the expiration of its primary term so long as oil or gas is produced, should not be applicable to the construction of a term royalty deed containing the same or similar provisions. The "term royalty" in the case at bar is a determinable fee just as is the lessee's estate. In the event of temporary cessation of production under circumstances such as we have here, the plaintiffs' right to own and enjoy the royalty for a term of years and as long thereafter as oil, gas, or other minerals, or either of them, is produced in paying or commercial quantities, will con-

tinue in any event as long as the operator in good faith exercises diligence. We do not have a case of a nondiligent fee owner operator before us.

Respondents rely upon the case of Holchak v. Clark, Texas Civ. App., 284 S.W. 2d 399, wr. ref., and Sellers v. Breidenbach, Texas Civ. App., 300 S.W. 2d 178, wr. ref., n.r.e. These cases are not in point. Neither of these cases deals with the question of cessation of production either temporary or permanent. The question in the Holchak case, supra, was " 'whether or not there was paying production from the land within six months after December 10, 1945,' i.e., on June 10, 1946." The uncontradicted evidence was that on or before June 10, 1946, there was no production from the well situated on the premises covered by the royalty deed. The same question was involved in the Sellers case, supra. The court simply held there was no production whatever from the premises. Since the facts in the present case clearly show that the cessation of production in paying or commercial quantities was temporary and not permanent, and that the diligence of the operator restored production from the Ross-Singleton No. 1 well within a reasonable time, it follows that the estate granted by the royalty deed is still in full force and effect and has not terminated.

The judgments of the trial court and the Court of Civil Appeals are both reversed, and judgment is here rendered declaring the term royalty deed of date March 16, 1940, has not expired, but is still in full force and effect.

Opinion delivered April 15, 1959.

Rehearing overruled May 27, 1959.