Morris **BRASLAU** et al., Appellants,

v.

**AMOCO PRODUCTION COMPANY** et al., Appellees.

No. 1126.

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1977.

Rehearing Denied April 20, 1977.

Thomas M. Andrews, Ellis, Andrews & Lawrence, Inc., Aransas Pass, James E. Klager, J. W. Cooper, Jr., Corpus Christi, for appellants.

W. Scott Clark, Clark & Tartaglia, Fort Worth, for appellees.

OPINION

YOUNG, Justice.

This is an appeal from a declaratory judgment decision holding three term royalty contracts still in full force and effect

even though production had ceased after the primary terms had elapsed.

The plaintiffs in the trial court, all term royalty owners, were: Amoco Production Company (formerly Midwest Oil Corporation); Fred W. Shields; Katz Oil Company; Maurice E. Forney, Charles E. Worrel; Marian McCarrick, Marian McCarrick, Trustee; Ethel W. Stewart; and Johnnye Jones Peet. The defendants, all reversion owners, were: Morris Braslau; Irving Braslau as Guardian of the Estate of Frank Braslau, N.C.M.; John Kugerl and wife, Anna Kugerl.

The case was tried to the court without a jury, primarily on stipulated facts. In its judgment the trial court held that the operator used reasonable diligence and good faith in reworking operations on and after November 13, 1972; that production was restored within a reasonable time; that cessation of production between November 13, 1972, and February 24, 1973, was temporary; and that the term royalty contracts had not terminated and are still in force and effect. There were no findings of fact and conclusions of law filed separately from those in the judgment. From that judgment the defendants appeal.

On September 2, 1947, Frank Braslau and Morris Braslau conveyed to R. P. Holland an undivided $^{15}/_{32}$ interest to all royalties produced from lots 206 and 207 of certain land in Live Oak County. This grant was to last "for a period of fifteen years from the date hereof and as long thereafter as oil, gas, or other minerals or either of them, is produced or mined from the lands described herein in paying or commercial quantities." Subsequently, those interests were obtained by Midwest Oil Corporation ($^{10}/_{32}$) and Fred W. Shields ($^{5}/_{32}$) by mesne conveyances.

On February 4, 1958, Frank Braslau and Morris Braslau conveyed to Katz Oil Company ⅛ interest in all royalties produced from lots 206 and 207 of certain property in Live Oak County. This grant was "for a period of 15 years from the date hereof and as long thereafter as oil, gas or other minerals, or either of them is produced or mined from the land described herein in paying or commercial quantities." On that same day, John Kugerl and wife, Anna Kugerl, executed to Randolph Coleman a term royalty deed of the same duration for lot 205 of the same property. The following persons have obtained Randolph Coleman's interest in lot 205 through mesne conveyances: Johnnye Peet, Maurice Forney, Charles Worrel, Ethel Stewart, Marian McCarrick and Marian McCarrick, Trustee. All of these lots, along with lot 307, were unitized into a unit known as the "Frank Braslau Gas Unit."

During the primary term of all the deeds, Frank Braslau Gas Unit # 1 Well was drilled and duly completed in the Wilcox 7800' (slick) Sand and the Wilcox 8800' (massive) Sand. Production from this well served to extend the primary term of Midwestern's and Shields' deeds. In August 1971, the Wilcox 7800' zone was depleted and on October 9, 1972, Arco, the operator of the unit, notified the working interest owner, George Coates, that production of the Wilcox 8800' was becoming marginal because of the high cost of handling water being produced with the oil. In that letter, Arco proposed to recomplete the # 1 Well in the Mackhank 8550' Sand and the Wilcox 7700' Sand. On November 13, 1972, all production ceased from the Wilcox 8800' Sand of the # 1 Well. Thereafter, no production was ever obtained from this well or these strata.

On November 14, 1972, Arco commenced workover operations on the # 1 Well and ceased on December 11, 1972. The purpose of this action was to recomplete the # 1 Well in the Mackhank Sand at 8550' and the Wilcox 7700' Sand. On January 12, 1973, after the casing collapsed in the # 1 Well, Arco moved 700' away and commenced the Frank Braslau # 2 Well, completing it in the Mackhank Sand at 8524'–8565' on February 17, 1973. Production from the # 2 Well commenced on February 24, 1973.

Subsequently, a third well was completed in the Wilcox 7700' Sand. All wells are located in lot 206. All wells producing or that have produced showed positive in the original log of the # 1 Well. Because the operator was producing the zones in se-

quence, the Mackhank 8550' and the Wilcox 7700' Sands were not initially produced.

There was no extraction of oil, gas, or other minerals from the "Frank Braslau Gas Unit" from November 13, 1972, to February 24, 1973. The primary term of the 1947 deed expired on September 2, 1962. The primary term of the 1958 deeds expired on February 4, 1973.

Appellants, Braslau and Kugerl, in their four points of error present principally two contentions on appeal: 1) that this is not a case of temporary cessation of production; therefore, the trial court's decision that the working operations were commenced and continued with due diligence and in good faith and that reproduction from the unit was restored within a reasonable time are inapplicable; 2) that production had ceased and, therefore, under the terms of the deeds, the interests as granted revert back to the grantors.

The concept of temporary cessation of production in term royalty deeds was adopted by the Supreme Court of Texas in *Midwest Oil Corporation v. Winsauer,* 159 Tex. 560, 323 S.W.2d 944 (1959), a case relied upon by appellees. In *Midwest,* production from a gas well had served to extend the term of the deed. Due to litigation between the lessee and the fee owners and mechanical breakdowns, production ceased for 174 days. The Supreme Court stated: "The question we have for decision is whether the cessation of production from such well due to litigation and mechanical breakdowns terminated the term royalty deed." The court held that in the instances of temporary cessation of production, there is an implied agreement that the term royalty will not terminate.

*Stuart v. Pundt,* 338 S.W.2d 167 (Tex.Civ. App.—San Antonio 1960, writ ref'd), another case cited by appellees, holds that where production ceased due to mechanical breakdowns and after two months of workover the casing collapsed and a new well was drilled and completed in the same sand, the interruption was temporary and term royalties did not terminate.

We do not deem these cases controlling in our case. In neither case was the period of nonproduction found to be temporary by reason of production from new strata after the initial production zone had been depleted, as in our case.

■ In the instant case, when the Frank Braslau # 1 Well was depleted, reworking operations were commenced to produce the Mackhank and Wilcox Sands. After the casing collapsed in the # 1 Well, a second well was drilled and completed in the discovered but unproduced sands. Production began from this well on February 24, 1973, 20 days after the primary term of the second deed had ended.

Production when restricted to paying of commercial quantities has been defined to exclude discovered minerals in Texas. *Holchak v. Clark,* 284 S.W.2d 399 (Tex.Civ. App.—San Antonio 1955, writ ref'd). The record on appeal shows only a positive well log and kicks experienced by the driller upon reaching the possible zones of production. In *Holchak,* the court said of similar situation:

". . . A favorable test for oil or gas, coupled with a strong indication that the well may at some future day become a producer, is not the same as having a producing well. Numerous accidents, unforeseen happenings and the like may intervene between discovery and production. Had the parties desired a provision which would allow the term of the deed to be extended by a discovery of oil within the definite term, followed by diligent operations thereafter, they could have expressly so provided. . . ."

■ It is the general rule that courts will not rewrite a contract for parties in the absence of fraud or mutual mistake. *Davis v. Davis,* 141 Tex. 613, 175 S.W.2d 226 (1943). To do so in this case would expand the meaning of the deed to include a continuous drilling clause. Continuous drilling clauses are not unusual in oil, gas and mineral leases or royalty conveyances. It is, therefore, not necessary for this Court to supply one in this instance. *Rogers v. Os-*

*born,* 152 Tex. 540, 261 S.W.2d 311 (1953); *Holchak v. Clark,* supra.

It is clear that there was no production from the "Frank Braslau Gas Unit" from November 14, 1972, until February 24, 1973. The primary term of the 1947 conveyance had already terminated and was only extended by production from the # 1 Well, and the primary term of the 1958 conveyances ended February 4, 1973. Applying these facts to the language of the deeds, it is clear that the deeds terminated on November 14, 1972, and February 4, 1973, respectively.

The judgment of the trial court is therefore reversed and judgment is here rendered that the mineral interests revert back to the grantors, their heirs and assignees.