Herbert STUART et al., Appellants,

v.

Fritz PUNDT, Appellee.

No. 13633.

Court of Civil Appeals of Texas.

San Antonio.

July 6, 1960.

Rehearing Denied Aug. 31, 1960.

Mahoney & Shaffer, Richard J. Hatch, Corpus Christi, Kelso, Locke & King, San Antonio, for appellants.

Lloyd, Lloyd & Dean, Alice, for appellee.

BARROW, Justice.

This is a suit by Fritz Pundt seeking judicial termination of three term royalty deeds executed by his predecessor in title, to approximately 144.2 acres of land in Jim Wells County, against eleven defendants, all of whom are present record owners of, and holding under, three original royalty deeds. Charles F. Hill, one of the owners, did not answer and default judgment was rendered against him. The other ten defendants did answer and are the appellants prosecuting this appeal.

The trial was to a jury, but at the close of all the evidence appellants and appellee, both, filed and presented motions for instructed verdict. The trial court overruled appellants' motion for instructed verdict and instructed the jury to return a verdict in favor of appellee, Fritz Pundt, and thereupon rendered judgment in his favor.

Appellants rely for reversal on four points of error. The first three points present a single contention, i. e., that the court erred in granting appellee's motion for instructed verdict and in overruling appellants' motion, for the reason that the evidence is undisputed that the cessation of production was temporary, due to mechanical difficulties, and was restored with due diligence and within a reasonable time. Appellants' contention is sound and must be sustained.

On December 30, 1936, Mrs. Ida Sachtleben, a feme sole, then owner of the lands here in controversy, executed an oil, gas and mineral lease covering said 144.2 acres, to K. O. Bundy, Lessee, for a primary term of ten years. Thereafter she executed three term royalty deeds, the first on August 7, 1939, to A. H. Ehlers, the second on February 8, 1940, to W. Earl Rowe, and the third on March 1, 1940, to W. B. Collins. Each royalty deed was for a term of fifteen years from its date, "and as long thereafter as oil, gas or other minerals, or either of them, is produced or mined from the lands described herein, in paying or commercial quantities." Each royalty deed covers the same land as that covered by the above-mentioned oil and gas lease. Appellants hold under these deeds and can-

cellation of said three royalty deeds is the relief sought by appellee and granted by the trial court in this suit. The primary terms of the three royalty deeds had all expired by March 1, 1955, but the royalty interests were thereafter maintained in effect by production from the lands covered thereby. There had been earlier production of oil from the premises, but for all times here involved the only production from the lands was of gas, and that was from a single gas well on the 144.2 acres. Fritz Pundt, appellee, acquired the lands in controversy in 1942 by mesne conveyances from Mrs. Ida Sachtleben. At that time all of the minerals were outstanding, having been reserved by Mrs. Sachtleben for life, but upon her death appellee became the owner of all mineral rights still with the surface of the lands, including the reversionary rights in the term royalty interests here involved.

Through the month of October, 1957, the gas well on the premises produced at a relatively steady rate of about 26½ million cubic feet per month. About the end of October, 1957, the well began to make sand, water and bottom sediment to the point where the connection was cut off and gas could not be produced. Operations to restore the well were commenced at once and continued regularly and diligently until about the 22d day of December, 1957, when it was concluded that the casing in the well had collapsed. It being impractical to attempt to restore a well in which the casing had collapsed, the decision was made to drill a new well. The old well was plugged and application was made to the Railroad Commission for a permit to drill a new well. The permit was granted and a new well actually spudded in on January 27, 1958. It was drilled to the same sand from which the old well had been producing and was completed on February 1, 1958. It was placed on production as a gas producer on February 4, 1958. During the month of February, 1958, it actually produced slightly more than 23,000,000 cubic feet of gas, and has continued to produce in commercial quantities ever since.

We think the law controlling and determinative of the question here involved was settled by the Supreme Court of Texas in Midwest Oil Corp. v. Winsauer, Tex., 323 S.W.2d 944, 948. We shall not attempt to elaborate on the language used therein. The opinion is clear and unmistakable. While the case did not altogether involve a temporary interruption of production due to mechanical difficulties, but also involved an interruption for a period of time due to court orders in lawsuits between the landowners and the operator, the Court applied the well-established rule applicable to leases which are for a term of years "and as long thereafter as oil, gas, or other minerals, or either of them, is produced in paying or commercial quantities." The Court reviewed the decisions of this State and other jurisdictions, and discussed the cases involving a temporary cessation of production due to mechanical difficulties, particularly Scarborough v. New Domain Oil & Gas Co., Tex.Civ.App., 276 S.W. 331, a case in which the cessation was due to the collapsing of a gas well casing and the drilling of a new well. Although the royalty deed under consideration in the Winsauer case did not expressly provide that the term royalty would not terminate because of temporary interruptions, the Court held that such a provision was necessarily implied, and then said:

"The exact question we are called upon to answer has never been presented to an appellate court of this jurisdiction, but we believe that the reasoning contained in cases wherein oil and gas leases which were effective for a term certain and so long thereafter as oil, gas, or other minerals were involved, is applicable and leads to the conclusion that a temporary cessation of production in paying or commercial quantities will not cause the royalty deed to terminate."

In the Winsauer case respondents relied upon the cases of Holchak v. Clark, Tex. Civ.App., 284 S.W.2d 399, and Sellers v. Breidenbach, Tex.Civ.App., 300 S.W.2d 178, as appellee does here, but these cases are

not in point. Neither of them deals with the question of cessation of production either temporary or permanent—there was no production during the primary period.

Appellee here relies strongly on the case of Archer County v. Webb, Tex.Civ.App., 326 S.W.2d 250, and the opinion of the Supreme Court affirming the decision, 338 S.W.2d 435. This case is readily distinguishable from the instant case. It involved a situation where the lease under its terms was kept alive by the making of shut-in gas royalty payments in lien of production. The term royalty deed contained no such provision. There was no actual production. It was not a case of temporary interruption of production, but a case of no production.

Under the undisputed evidence in the case at bar, the court should have granted appellants' motion for instructed verdict, and rendered judgment accordingly.

The judgment is reversed and here rendered that appellee take nothing.