**MIDWEST OIL CORPORATION, Appellant,**

**v.**

**W. C. LUDE et ux., Appellees.**

**No. 25.**

Court of Civil Appeals of Texas.

Corpus Christi.

Jan. 23, 1964.

Rehearing Denied March 10, 1964.

---

W. Scott Clark, Fort Worth, Murray G. Smyth, Houston, Morrison, Dittmar, Dahlgren & Kaine, San Antonio, for appellant.

Linton S. Benge, Goliad, for appellees.

GREEN, Chief Justice.

On July 14, 1942, appellees Willie C. Lude and wife, Louise Lude, executed two term royalty deeds to Walter W. Carter, each conveying an undivided ¼ interest in all of the oil and gas and other mineral royalty in a certain 200 acre tract of land in Goliad County, Texas, owned by the Ludes, for fifteen years "and as long thereafter as oil, gas or other minerals, or either of them, is produced or mined from the lands described herein in paying or commercial quantities. If at the expiration of said 15 years from date hereof oil, gas or other minerals, or either of them, is not being produced or mined from said land or any portion thereof in paying or commercial quantities, this contract shall be null and void and the Grantees rights hereunder shall terminate."

On July 1, 1954, Lude and wife executed to Sunray Oil Corporation an oil and gas lease on said 200 acres, known as the Sunray Lease, containing a shut-in gas clause providing that where gas from a well producing gas only was not sold or used, lessee could pay as royalty $1.00 per acre per year, and upon such payment it would be considered that the property was producing. None of the defendant royalty owners signed the lease agreements. However, on November 28, 1960, Midwest Oil Corporation executed a unilateral ratification of the Sunray Lease, and all other nonparticipating royalty owners executed similar ratifications.

During the primary term of the royalty deeds Sunray-Shoreline No. 1 Lude well was drilled on the land covered by the lease, resulting in the production of oil in paying quantities. Production from this well served to extend the term of the royalty deeds beyond the date they would have otherwise expired.

On January 10, 1961, while said No. 1 well was producing, James A. Rehler under a farm-out agreement brought in a gas well on this property, which was shut-in pending negotiation of a gas purchase contract, gas line connection and Federal Power Commission certificates. Said gas well remained shut-in until May 22, 1961, at which time it was placed on production.

Production from the Sunray-Shoreline No. 1 Lude well ceased entirely on March 6, 1961, and no re-working operations were conducted thereon. The rods and tubing were pulled on April 1, 1961, and the well was plugged and abandoned on April 13, 1961.

There was no extraction of oil, gas or other minerals from the Sunray lease from March 6, 1961 to May 22, 1961.

The interests granted by the two royalty deeds from Lude to Carter vested by mesne conveyances as follows:

| | |
|---|---|
| T. S. Reed | --- 1/16 of 1/8 R.I. |
| Foster Petroleum Corp. | --- 1/16 of 1/8 R.I. |
| Fred W. Shield | --- 1/16 of 1/8 R.I. |
| Ruth McLean Bowman | --- 4/16 of 1/8 R.I. |
| Midwest Oil Corp. | --- 1/16 of 1/8 R.I. |
| | 8/16 of 1/8 R.I. |

Appellees W. C. Lude and wife, brought this suit for a declaratory judgment seeking an adjudication that the term royalties had terminated between the time the oil

well was depleted on March 6, 1961, and actual production began from the Rehler gas well on May 22, 1961. Although the stipulation is silent as to whether shut-in gas royalty was paid during this interval, no one contested the fact that the lease at all times remained in full effect. All of the royalty claimants under the deeds were named as defendants. Foster Petroleum Corporation and Ruth McLean Bowman filed disclaimers.

The trial before the court was on a written stipulation of facts under Rule 263, T.R. C.P. No issue of fraud or bad faith was raised by either party. The judgment was that the term royalties had terminated on March 6, 1961. Defendants Reed, Shield and Midwest Oil Corporation excepted and gave notice of appeal, but only the Midwest perfected its appeal to this court. We affirm the judgment.

Appellant Midwest Oil Corporation, hereinafter called Midwest, bases its appeal on three points, as follows:

### "Points of Error

"First Point.—Where a term royalty is extended by production, if that production is interrupted, the criterion is whether the interruption is temporary or permanent.

"Second Point.—In determining whether interruption of production is temporary or permanent, the facts about production should be examined with respect to the entire tract, and not confined to the single well on that tract.

"Third Point.—Where the reversion owners execute, and the term royalty owners ratify, a lease containing a stipulation that payment of shut-in gas royalty shall constitute commercial production from subject land, the term royalty deed is modified."

Midwest asserts that the above legal precepts were overlooked by the trial court, and said precepts should govern the decision in this cause.

The first two points are briefed together and shall be so considered by us. We find no fault with the general statements contained therein, but differ with appellant as to the manner in which they should be applied to the facts of this case.

■ It is now well established that the completion of a gas well capable of producing in paying quantities but shut-in due to lack of pipe line facilities or for other reasons is not considered production, or production in paying quantities, under the provisions of a term royalty deed which contains no shut in gas well clause. Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435; Gulf Oil Corp. v. Reid, 161 Tex. 51, 337 S.W.2d 267; Holchak v. Clark, Tex.Civ. App., 284 S.W.2d 399, writ ref.; Sellers v. Breidenbach, et al., Tex.Civ.App., 300 S.W. 2d 178, writ ref.; Holland v. Vela De Pena, Tex.Civ.App., 343 S.W.2d 750, writ ref.; Investors Royalty Co. et al. v. Childrens Hospital Medical Center, et al., Tex.Civ. App., 364 S.W.2d 779, writ ref. n. r. e.; Midwest Oil Company v. Mengers, Tex.Civ. App., 372 S.W.2d 247, writ. ref.; Union Producing Co. v. Scott, 173 F.Supp. 361, aff'd. 5th Cir. 267 F.2d 469. After the Sunray-Shoreline No. 1 Lude well completely depleted on March 6, 1961, there was, therefore, no production of minerals on the 200 acre tract until the Rehler gas well was connected to the pipe line and placed in production on May 22, 1961.

■ Appellant argues that since there had been actual production which had extended the term royalty beyond its original time, such production in paying quantities was only temporarily interrupted during the period from March 6, 1961, to May 22, 1961, and in support of such contention cites Midwest Oil Corporation v. Winsauer, et al., 159 Tex. 560, 323 S.W.2d 944, and Stuart v. Pundt, Tex.Civ.App., 338 S.W.2d 167, writ ref.

We do not believe that the cases or Midwest Oil Corporation, et al. v. Winsauer, et al., supra, and Stuart v. Pundt, supra, are

controlling of the present case. In Midwest Oil Corp. v. Winsauer, production from a gas well had served to extend the rights of the royalty owners. Due to litigation between the lessee in the lease and the fee owners and mechanical breakdowns in the well, production was caused to cease for 174 days, during which interval the litigation was brought to an end, the well was repaired, and production resumed. The Supreme Court stated: "The question we have for decision is whether the cessation of production from such well due to litigation and mechanical breakdowns terminated the term royalty deed," and held: "Since the facts in the present case clearly show that the cessation of production in paying or commercial quantities was temporary and not permanent, and that the diligence of the operator restored production from the Ross-Singleton No. 1 well within a reasonable time, it follows that the estate granted by the royalty deed is still in full force and effect and has not terminated."

Stuart v. Pundt, Tex.Civ.App., 338 S.W. 2d 167, writ ref., cites with approval Midwest Oil Corp. v. Winsauer, supra, and holds that where production from a gas well ceased due to a mechanical breakdown in the well, and after two months of a fruitless work-over job the well was abandoned because the casing in the well had collapsed and it was impractical to restore same, and a new producing well was promptly drilled to the same sand, the interruption in production was only temporary and the term royalty deed did not terminate.

Both of these cases dealt not only with the matter of temporary interruption of production, but also with continuous and diligent operations during such period to restore production by repairing the damage to the well (in both cases) and by drilling a new well to the same producing sand after such efforts had failed. (Stuart v. Pundt) In neither case was the period of no production found to be temporary by reason of subsequent production from a shut-in gas well.

In the instant case, when the well ceased to produce it was immediately abandoned. The parties stipulated that there were no re-working operations conducted thereon. "Operations" cannot be extended to include a search on the part of lessee for a market, or to secure a purchaser. Gulf Oil Co. v. Reid, 161 Tex. 51, 337 S.W.2d 267. The existence of the shut-in gas well on the lease could not serve to benefit the rights of appellant, and the situation presented a case of no production and no activity on the lease after the No. 1 Lude well was totally abandoned, so long as the gas well remained shut-in.

Three years after handing down the opinion in Stuart v. Pundt, supra, the same court decided Investors Royalty Co. et al. v. Childrens Hospital Medical Center, et al., 364 S.W.2d 779, writ denied n. r. e. The facts are very nearly identical in principle with our situation. The term royalty interests were extended by virtue of production which continued until July, 1958, when the well completely depleted. It was plugged and abandoned in September, 1958. In September, 1957, while this well was producing, a well capable of producing gas in commercial quantities was completed and shut-in for lack of market. In January, 1959, while there was no actual production from the lease, another gas well was completed and shut-in. Shut-in royalty was timely paid and the lease continued in force. In September, 1959, the gas wells were connected to a pipe line and placed on production. From August, 1958, to September, 1959, there was no production from this lease.

In holding that under such facts the term royalty deed had terminated, Judge Pope, speaking for the court, said,

"Plaintiff Hospital contended below and the court held that paragraph (3) of the term royalty deed limited the term for fifteen years, plus such time as there was actual production thereafter. Actual production continued until July of 1958. The production which para-

graph (3) requires is actual production. Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435; Freeman v. Magnolia Petroleum Company, 141 Tex. 274, 171 S.W.2d 339; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509; Holland v. Vela De Pena, Tex.Civ.App., 343 S.W. 2d 750; Sellers v. Breidenbach, Tex. Civ.App., 300 S.W.2d 178, 179. When we look to that paragraph, the term royalty deed terminated after fifteen years plus the period of actual production. The shut-in royalty was paid under the terms of the lease, for a period of thirteen months. During that time there was no actual production. *As we understand Archer County v. Webb, supra, this was not a mere temporary cessation of actual production."* (Emphasis ours)

In Midwest Oil Corp. v. Winsauer and in Stuart v. Pundt, there were diligent and continuous operations in process to remedy the situation as to the very source of the interrupted production, and for such reasonable time as these activities continued in good faith, the cessation was temporary. In Investors Royalty Co. v. Childrens Hospital, etc., and in the instant case, there were no operations on the lease which would cause the cessation to be temporary.

We find that the trial court did not commit error in his application of the law as stated in appellants first two Points of Error to the facts of this case.

■ Appellant's last proposition as set forth in his third Point of Error is that where the reversion fee owners execute and the royalty owners ratify a lease containing a stipulation that payment of shut-in gas royalty shall constitute commercial production from subject land, the term royalty is modified to include such shut-in gas clause. In support thereof, appellant relies on Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W. 2d 914, and Spradley v. Finley, 157 Tex. 260, 302 S.W.2d 409.

This is the assignment that this same appellant presented in Midwest Oil Corporation, et al. v. Mengers, et al., Tex.Civ.App., 372 S.W.2d 247, writ refused. In that case, the lease was ratified by Midwest and other royalty owners. Appellant in support of his contention relied upon Southland Royalty Co. v. Humble, supra, and Spradley v. Finley, supra. The court, in holding that the shut-in gas clause of the lease was not extended to the term royalty deed by the unilateral ratification of such lease by the royalty owners, said:

"We think that Archer County v. Webb, supra, governs the case at bar. We think the facts of the instant case identical with the facts of the Archer County case, with the exception that in the instant case the plaintiffs *unilaterally* executed a division order which contained words of ratification of the oil and gas lease. It is noted that the Mengers Sr., the reversion owners, did not join in the division order or ratification. In our view, the unilateral act of plaintiffs in ratifying the lease, can in no way take the instant case out of the rule of Archer County v. Webb. * * *"

In Union Producing Co. v. Scott, et al., 173 F.Supp. 361, affirmed in 5th Cir., 267 F. 2d 469, the same contention was made, that the termination date of the royalty deed was modified by the ratification by the owners of the term mineral interests of the lease containing a shut-in gas clause, and Southland Royalty Co. v. Humble, supra, and Spradley v. Finley, supra were cited as authority. The court held that the ex parte ratifications by the owners of the term mineral interests did not serve to include the shut-in gas clause within the meaning of the mineral grants, saying "The parties could have placed in their royalty deed a shut-in gas well provision, if they had desired to do so, but we find no such provision in this deed."

We feel that the contention under its third point has been decided adversely to

appellant in Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435; W. H. Holland, et al. v. Vela De Pena, et vir, Tex.Civ. App., 343 S.W.2d 750, writ ref.; Investors Royalty Co., et al. v. Childrens' Hospital Medical Center, et al., 364 S.W.2d 779, writ ref. n. r. e.; Midwest Oil Corporation, et al. v. Mengers, 372 S.W.2d 247, writ refused; and Union Producing Co. v. Scott, et al., 173 F.Supp. 361, aff'd. 5th Cir., 267 F.2d 469. We overrule this point.

The judgment is affirmed.