**R. L. PEVETO, et al., Appellants,**

v.

**Ernest STARKEY, Jr., et al., Appellees.**

**No. 1335.**

Court of Appeals of Texas, Tyler.

Oct. 29, 1981.

Rehearing Denied Nov. 30, 1981.

Willis Jarrel, Mike Hatchell, Tyler, Edwin P. Horner, Waco, for appellants.

James Knowles, Tyler, for appellees.

SUMMERS, Chief Justice.

This is an appeal from a suit in which the trial court held that a royalty deed from A. G. Jones (Jones) to R. L. Peveto (Peveto) had terminated and was of no force and effect. Judgment was rendered in favor of the plaintiff, Ernest Starkey (Starkey).

We affirm.

The stipulated facts upon which this case was tried are as follows: On April 23, 1960, Jones conveyed to Peveto a three-fourths non-participating term royalty interest in certain described lands.[1] The term was for 15 years and "as long thereafter as oil, gas or other minerals, or either of them, is produced or mined from the lands described herein, or pooled therewith, in paying commercial quantities." Peveto's deed contained no shut-in royalty clause. On May 31, 1960, Peveto conveyed a portion of his royalty interest to E. A. Wendlandt (Wendlandt).[2]

On September 21, 1972, Jones, as owner of the executive rights, gave a standard oil

---

1. The conveyance was made by two separate deeds, identical in terms, and for purposes of this appeal will be considered as one conveyance.

2. Both Peveto and Wendlandt subsequently conveyed their interests in the royalties. To simplify the facts, we will ignore these later transactions as their validity rests on the validity of the Peveto and Wendlandt interests.

and gas lease covering the property in question to Edge & Moehlmann. This lease contains a shut-in royalty clause which reads, in pertinent part, as follows:

"[w]hile there is a gas well on this lease or on acreage pooled therewith, but gas is not being sold or used, Lessee may pay or tender as royalty on or before ninety (90) days after the date on which (1) said well is shut-in, or (2) the land covered hereby, or any portion thereof, is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at monthly intervals, a sum equal to one-twelfth ($\frac{1}{12}$) of the amount of the annual rental . . . , and if such payment is made or tendered, this lease shall not terminate and it will be considered that gas is being produced from this lease in paying quantities . . . "

On July 3, 1973, Peveto and Wendlandt signed a "Ratification of Oil, Gas and Mineral Lease" by which they agreed to adopt, ratify and confirm the lease from Jones to Edge & Moehlmann as if they had originally been named as lessor in said lease. A few months later, Edge & Moehlmann drilled a test well on the lease and discovered gas of a high sulphur content. Due to rules and regulations of the Texas Railroad Commission, the gas could not be produced, and, consequently, the well was shut-in. Shut-in royalties were thereafter tendered and received by Jones, Peveto and Wendlandt.

The plaintiff Starkey enters the picture on November 16, 1973, when he takes a deed from Jones for an undivided three-fourths royalty interest in and upon the same lands covered by the Jones/Peveto conveyance. At the time of this conveyance, the primary term of the Jones/Peveto royalty interest had not expired.

Finally, on January 6, 1975 (still within the primary term of the Jones/Peveto royalty), Jones attempted to extend the term royalty interest to Peveto from 15 to 25 years. As consideration for this "extension" Jones received $2,000 from Peveto and Wendlandt.

Starkey filed this declaratory judgment suit seeking to have the Jones/Peveto term royalty declared of no force and effect. His main contention is that the Peveto interest expired when there was no actual production of oil or gas during the primary term. Peveto and Wendlandt, and those taking under them, contend, for the reasons set out later, that the Peveto interest was extended into the secondary term and that the Starkey deed was null and void.

In reaching its judgment, the trial court made the following conclusions of law based on the above-cited facts:

### CONCLUSIONS OF LAW [3]

**1.**

That the term royalty deed from A. G. Jones and wife, Dessie Jones, to R. L. PEVETO, dated April 23, 1960, recorded in Vol. 453, Page 91 of the Deed Records of Henderson County, Texas has terminated pursuant to its terms and is of no force and effect.

**2.**

That the term royalty deed from R. L. PEVETO to E. A. WENDLANDT, dated May 31, 1960, recorded in Vol. 483, Page 618 of the Deed Records of Henderson County, Texas, has terminated and is of no force and effect.

**3.**

That the Amendment of the Term Royalty Deeds from A. G. Jones and wife, Dessie Jones, to R. L. PEVETO, dated January 6, 1975, recorded in Vol. 746, Page 366, and another Amendment between the same parties being recorded in Vol. 746, Page 369 of the Deed Records of Henderson County, Texas, are void and have no force and effect.

**4.**

That under the facts of this case, the Plaintiffs are entitled to a Judgment as a matter of law.

---

3. Numerals are ours.

**5.**

That the term royalty deeds from A. G. Jones and wife, Dessie Jones, to R. L. PEVETO created a determinable fee estate in PEVETO, with the Grantors, Jones, owning a reversionary interest.

**6.**

The deeds from Jones to STARKEY conveyed the reversionary estate then owned by Jones and conveyed a presently vested interest in the land to STARKEY.

**7.**

That the ratification of the Oil and Gas Lease from Jones to Edge & Moehlmann by PEVETO and his assignees did not amend the terms of the term royalty deeds executed by Jones to PEVETO.

**8.**

That the term royalty deeds from Jones and wife to ERNEST STARKEY are not subject to and do not violate the rule against perpetuities.

**9.**

That PEVETO and his assignees were not intended third party beneficiaries of the lease between A. G. Jones and Edge & Moehlmann.

**10.**

That the payment of shut-in royalty is not equivalent to production of oil, gas or other minerals for the purposes of extending the term of the term royalty deeds to PEVETO.

Peveto and Wendlandt, as appellants, predicate this appeal upon seven points of error. Under points 2–4, the issue to be decided is whether the Jones to Starkey conveyance violated the rule against perpetuities.

The deed to Starkey contained the usual granting clause which provided that Jones and wife "have granted, sold, conveyed, assigned and delivered" a three-fourths interest in and to all the oil and gas royalties that may be produced from the described lands. The deed went on to provide that "This grant shall become effective only on the expiration of the above described Royalty Deed to R. L. Peveyto (sic) dated April 23, 1960; . . . This grant shall run, and the rights, titles and privileges hereby granted shall extend to grantee herein [Starkey] . . . for a period of ten (10) years from the expiration date of the Royalty Deed unto R. L. PEVEYTO (sic) dated April 23, 1960 . . . ."

Peveto and Wendlandt contend that this last quoted section created a perpetuity which is prohibited under our Texas Constitution. Vernon's Ann.St.Const. art. 1 § 26.

To decide this question, we must first determine what interest was conveyed by the Jones to Starkey deed. Neither side asserts the deed is ambiguous, and, in such a case, it is the duty of the court to construe the deed within the four corners of the document. In such construction, we must seek the intention of the parties as shown by the deed. *Rutherford v. Randal*, 593 S.W.2d 949, 953 (Tex.1980); *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669, 673 (1959).

In considering the granting clause of the Starkey deed, it is obvious that Jones intended to, and did, convey a present interest in the royalty estate he owned. Considering further the additional clause, "This grant shall become effective only on the expiration" of the deed to Peveto, we hold that this clause constitutes an identifying reference to the interest in land which was the subject of the conveyance. *Rutherford v. Randall*, supra. That interest was a possibility of reverter which is an alienable interest. *Robinson v. Jacobs*, 113 Tex. 231, 254 S.W. 309, 311 (1923). In other words, at the time of the conveyance to Starkey, Peveto held the subject three-fourths royalty interest in fee simple determinable, and Jones held the possibility of reverter. *York v. Kenilworth Oil Co.*, 614 S.W.2d 468, 471 (Tex.Civ.App.—Waco 1981, writ ref'd n. r. e.); *Caruthers v. Leonard*, 254 S.W. 779, 782 (Com.App.1923). Since a possibility of reverter is not subject to the rule against

perpetuities, Restatement, Property (Perpetuities) § 372; *Rosson v. Bennett*, 294 S.W. 660, 662 (Tex.Civ.App.—Waco 1927, no writ), we see no reason to strike down the conveyance of such interest as a violation of said rule.

Stated differently, we construe the deed from Jones to Starkey as having conveyed the possibility of reverter of Peveto's three-fourths royalty interest. At the time of this conveyance to Starkey there was no guaranty that Peveto's three-fourths royalty would ever terminate and revert back to the grantor. Such is the characteristic of a fee simple determinable. However, in the event Peveto's interest should terminate, the royalty estate would revert back to the holder of the reversionary interest—be such holder the original grantor or his subsequent grantee. We find that the rule against perpetuities applies to none of these interests or transactions. Appellants' points 2–4 are overruled.

Having decided that Starkey's deed was effective, we must now determine if Peveto's royalty interest ever terminated. Appellants argue quite forcefully that Peveto's term royalty interest was extended into the secondary term. As a reminder, we point out that Peveto's deed did not contain a shut-in royalty clause. However, at the time Jones conveyed the royalty interest to Peveto, there was an outstanding lease on the minerals held by James R. Miller. The Miller lease had a standard shut-in royalty clause whereby the *lease* would be extended into the secondary term in the event gas was discovered, but shut-in, and shut-in royalties were paid. The Peveto deed was made "subject to" the terms of the Miller lease and further states that the deed

"covers and includes the same interests as first hereinabove named, of all the oil royalty and gas royalty and casinghead gas and gasoline royalty, and royalty from minerals or products, due and to be paid under the terms of said lease . . . ."

Appellants contend that this set of circumstances (i. e., a royalty interest subject to a lease such as Miller's) should lead us to conclude that the payment of shut-in royal-

ties by not only Miller but also by any subsequent lessee, e. g., Edge & Moehlmann, would extend Peveto's deed into the secondary term. The argument is that the "subject to" clause in Peveto's deed was, in effect, a contract between Jones and Peveto that the payment of royalties, either from actual production or as a substitute for production, would inure to Peveto's benefit and extend the term of his deed. Appellants argue this conclusion would be true whether the royalties arose under the lease in existence at the time of the deed or arose under any future lease.

■ The real issue before us, however, is what affect the "subject to" clause had on Peveto's interest when applied to the subsequent Edge & Moehlmann lease—not the Miller lease which had expired without actual production. We find the "subject to" clause in Peveto's deed not quite so magical as do appellants. The "subject to" provisions are placed in royalty and mineral deeds for basically three reasons: One, to protect the grantor against a breach of warranty; two, to spell out the precise interest the grantee is to receive and therefore to make the deed clearer; and, three, to make certain that rentals and royalties under the *existing* lease pass to the grantee. See 2 Williams and Meyers, Oil and Gas Law, § 340. Without more specific language in the Peveto deed, we are not inclined to read the "subject to" clause as extending the benefits of the Miller lease into any future leases.

Moreover, we think *Archer County v. Webb*, 161 Tex. 210, 338 S.W.2d 435 (1960) is applicable to this fact situation. In that case, the oil and gas lease was for a primary term of 10 years, and contained a provision that if gas were discovered, the lessee could pay $50 per well per year in lieu of production. A separate instrument, a term royalty deed, provided for a share of the production for 15 years and as long thereafter as oil or gas was produced. This term royalty conveyance did not contain the shut-in royalty provision. Gas production was obtained; the well was capped; and the shut-in royalties were paid or tendered. The court

held that the term royalty, a determinable fee interest, terminated because there was no actual production after the primary term. Shut-in royalty payments were not "production" after the primary term as far as the term royalty was concerned. The court concluded that in order for a shut-in royalty clause to extend the term royalty into the secondary term, the shut-in royalty clause must be in the *deed* itself.

We realize that the facts in the instant case are somewhat different from those in Archer County in that Peveto's deed contained a "subject to" clause which referred to the Miller lease which, in turn, contained a shut-in royalty clause. However, for the reasons set forth above, we believe the "subject to" clause refers to and affects only the lease in existence at the time of the royalty interest conveyance. For practical purposes then, we can ignore the "subject to" clause when considering Peveto's deed as it relates to the subsequent Edge & Moehlmann lease. That being the case, the present suit is brought squarely within the rule announced in Archer County.

Next, appellants argue that when Peveto and Wendlandt ratified the Edge & Moehlmann lease such ratification had the effect of modifying the royalty deeds. *Montgomery v. Rittersbacher*, 424 S.W.2d 210 (Tex. 1968), is cited as some authority for this proposition. That case concerned a royalty interest in Blackacre ("First Tract") that was included in a lease by the executive with Whiteacre ("Second Tract"). The lease included a pooling and an entirety clause. Subsequently the lessee included Whiteacre in a unit with Greenacre ("Third Tract"), and unit production was obtained from a well on Greenacre. The court allowed the royalty owner to share in the production from Greenacre holding that while the owners of the executive rights generally do not have the power to bind the non-participating royalty interest by virtue of an entirety clause alone, such can be accomplished by the royalty owner's ratification.

There have been other cases where the ratification by a royalty owner of a lease

between the grantor/lessor and lessee was held to be effective. *Southland Royalty Co. v. Humble Oil & Refining Co.*, 151 Tex. 324, 249 S.W.2d 914 (1952); *Spradley v. Finley*, 157 Tex. 260, 302 S.W.2d 409 (1957); *Ruiz v. Martin*, 559 S.W.2d 839 (Tex.Civ.App.1977, writ ref'd n. r. e.). At the same time, there are a number of cases where an attempted ratification was held to be ineffective. *Campbell v. Dreier*, 382 S.W.2d 179 (Tex. Civ.App.—San Antonio 1964, writ ref'd n. r. e.); *Midwest Oil Corp. v. Lude*, 376 S.W.2d 18 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); *Midwest Oil Corp. v. Mengers*, 372 S.W.2d 247 (Tex.Civ.App.—Waco 1963, writ ref'd).

■ The distinguishing feature between these two sets of cases is the type of lease provision the royalty owner is attempting to ratify. The Ritterbacher line of cases all deal with pooling, unitization and entirety clauses included in the leases. The law appears settled in this area that a royalty owner's ratification of a lease, executed for the purpose of protecting his interest against the operation of such clauses, is effective.

■■ However, we believe it is equally well settled that when the royalty owner ratifies a lease in an attempt to have the shut-in royalty clause in the lease inure to his benefit and thereby extend the term of his royalty interest, such ratification is ineffective. *Midwest Oil Corp. v. Lude*, supra; *Midwest Oil Corp. v. Mengers*, supra. The instant case fits into this second category of cases. Therefore, we find and hold that Peveto and Wendlandt's execution of the instrument entitled "Ratification of Oil, Gas and Mineral Lease" was of no force and effect in extending the term of their royalty interest. Having so decided, we further hold that this case fits squarely into the Archer County rule and that Peveto and Wendlandt's royalty interest expired by its own terms at the end of the primary term on April 23, 1975, leaving the Starkey royalty interest in full force and effect. Appellant's points 1, 5, 6 and 7 are overruled.

Judgment of the trial court is hereby affirmed.

McKAY, J., not participating.