**PARKER et al. v. PARKER et al.**

**No. 11054.**

Court of Civil Appeals of Texas. Galveston.

Oct. 10, 1940.

Rehearing Denied Nov. 7, 1940.

Carney & Carney and Tom N. Cope, both of Atlanta, Green & Farmer, of Tulsa, Okl., and Smitherman & Smitherman, of Shreveport, La., for appellants.

Bartlett & Patman, of Linden, for appellees.

CODY, Justice.

This is a case of first impression in this State, in so far as it involves the question of whether, where parties own different tracts of land which are contiguous and lease them in all respects as though they were a single tract owned by the lessors in common, said lessors thereby pool their interest so that they will share pro rata in the royalty no matter from which land oil is produced.

On June 25, 1935, George E. Parker and wife, Mamie W.; Willie Parker and wife, Lelia May; Mrs. Elizabeth P. McGee and husband, Edwin; Erbert Parker; Mrs. Willie Squyers and husband, R. C. Squyers, executed an oil and gas lease to Jones & Ferguson covering 244 acres of land in Cass County, Texas, for the cash consideration of $3,050. The land was described as a single tract of land, and the lease provided for the payment of royalty to each lessor in the proportion that his ownership bore to the whole 244 acres. We subjoin to our opinion a copy of the lease (omitting the acknowledgments).

In point of fact appellees, who were plaintiffs below, owned a tract of 66 acres, and the remaining Parker heirs owned a tract of 178 acres; and these two tracts

304

formed the 244 acres which was covered by the lease, as before stated.

In June, 1936, the lessees paid the rentals in lieu of the drilling obligations to keep the lease in force. And thereafter the lessees, Jones & Ferguson, assigned a certain 80 acres, which constituted a part of the George E. Parker et al. 178 acres, to Bay Oil Corporation, who drilled thereon and brought in a producing well.

Subsequent to the completion of the discovery well, Jones & Ferguson (lessees) assigned all the remainder of the lease to the Ray Drilling Company, which completed three producing wells on the 178-acre tract; and no wells have ever been drilled on the 66-acre tract.

In June, 1937, the Ray Drilling Company tendered to the credit of appellees rental on the 66 acres in lieu of performing drilling obligations. In this connection a special issue was submitted to the jury, the answer of which will be found to dispose of any question which such action might be considered to have raised.

Appellees, as plaintiffs, brought this suit to have the court construe the lease as a "unitized" or pool lease, and to be declared the owners of 66/244ths of the one-eighth royalty provided for by the lease. Appellees further allege that appellee, Erbert Parker, was a half brother of the owners of the 178 acres, and that he and they had always been friendly in their dealings, and that it was mutually understood by the parties to the lease at the time it was executed that production on any part of the 244 acres should inure to the benefit of all so that all lessors should participate in the royalty from production had from any part of the 244 acres, and in the alternative pled that if the lease as drawn was insufficient to effectuate the intention of the parties to make of the lease a "unitized" one, that said lease be reformed, etc.

In response to special issues the jury found:

1. That the parties who signed the lease, prior to and at the time of signing it, had orally agreed that the lease was to be considered a unitized lease.

2. That Mrs. Willie Adcock (one of the appellees owning the 66 acres), after the discovery of oil, received and accepted delay rentals at the rate of a dollar an acre on her interest in the 66-acre tract, set apart to her and her son by partition in 1918.

3. That appellee, Erbert Parker, after the discovery of oil did not receive and accept delay rentals at the rate of a dollar an acre on his interest in the 66-acre tract set apart to him and his mother in the partition in 1918.

4. That Erbert Parker and Mrs. Willie Adcock, appellees, did not fail to claim any royalty from the lessee or the lessee's assigns before the drilling of the well drilled subsequent to the discovery well.

The court rendered judgment for appellees that they owned 66/244ths of the one-eighth royalty from the whole 244-acre tract covered by the lease in question.

The primary question here involved was passed on by the Supreme Court of West Virginia in South Penn. Oil Co. v. Snodgrass, 71 W.Va. 438, 76 S.E. 961, 963, 43 L.R.A.,N.S., 848, where it was held that an oil and gas lease executed by three several owners of contiguous lands, embracing which said lands described the demised premises as a single tract, contemplating a single well as a condition of its continuance, providing for payment of delay money to them jointly and, otherwise, treating them as tenants in common, is a joint lease of a single tract of land. In the opinion the court said: "Nowhere in the lease is there an intimation of several ownerships of parts of it, or a suggestion of intent to make separate tenancies. The proviso is for 'a well,' not wells, 'on the said premises' * * *. The clause providing for extension of the lease beyond the 10-year [i. e. primary] term requires only production of oil or gas thereafter, without any stipulation for production from more than one place or any particular place."

Again the court said: "We perceive no legal obstacle to a combination of several tracts of land, owned by different persons, into a lease as a single tract, since the lessors can apportion the rental among themselves in amounts corresponding with their interests, and we have decided that it can be done." The holding is sound. In the instant case the lessee was bound to pay a one-eighth royalty to "lessor", and the "lessor" in the lease consisted of several owners. The Supreme Court of Louisiana has reached the same conclusion. Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L.R.A. 1917D, 1115. In the case just referred to

the court held: A mining lease whereby several lessors or grantors dispose of the mineral rights on several tracts of land for a gross price, without stating the amount paid to each grantor and without stating or designating the area of land belonging to each grantor, creates a joint obligation. And "The language of the instrument leaves no doubt that their contract was joint and not severable. For example, the contract declares that lessees [lessors] are to be 'hereinafter styled grantor, whether one or more.'" The holding by the Supreme Court of California is in accord with that of Louisiana and West Virginia. Higgins v. California Oil & Asphalt Co., 109 Cal. 304, 41 P. 1087. See, also, Campbell v. Lynch, 81 W.Va. 374, 94 S.E. 739, L.R.A. 1918B, 1070. It is true that the Court of Appeals of Louisiana has expressed a different view from that of its own Supreme Court. United Gas Public Service Company v. Eaton, La.App., 153 So. 702, 709. But this opinion is by the intermediate court, not by the Supreme Court of Louisiana, and its force is weakened by the dissent of Mills, J. In his dissenting opinion he points out that, under the case of Nabors v. Producers' Oil Co., supra, the lease there in question is a joint or entire lease and not severable. He says, "Why should this lease, which contains no suggestion of separation of interest in the description of the land or terms, be held a joint lease as to everything except its very essence [,] development? The view adopted in the majority opinion does not make of it a gambling proposition, as suggested, but on the other hand invests the lessees with the sole power to determine whose land they will develop and which one of the joint lessors will receive the whole consideration for the lease to the exclusion of joint lessors. * * * I cannot conclude from the terms of the lease that any such condition was contemplated. On the other hand, it seems reasonable to me that the intention was that all the joint lessors should share proportionately in the consideration realized from the joint venture. To me, the best indication that the lease was intended to be joint is that the lessors entered into a joint and not a separate lease." We have not at hand the means of determining whether this case ever reached the Supreme Court. In any case, the opinion of Judge Mills is correct in principle. The owners of the land by the form of the lease have empowered the lessee to treat the tract of land as subject to a common ownership, and to keep the lease alive by drilling at any place thereon, and could arbitrarily or accidentally refrain from ever drilling upon the land of one of the lessors, and yet keep such lessor's land subject to his lease. The courts would not place a construction on a contract which would thus work a manifest injustice and hardship upon some of the parties unless the intent was clear and unambiguous. But in the present instance the clear terms of the lease require the "lessee" to pay the cash consideration to the "lessor" (i. e., to all the owners) on the basis that the tract is leased as a whole, and to pay the royalties to the same "lessor", in the proportion that the property belonging to each bore to the entire 244 acres, no matter in what part of the tract production is had. The lease here in question by its terms is a unitized lease as a matter of law. But this result was not an unforeseen accident brought about by unskillful drafting of the lease. The evidence shows, and the jury found, that the parties definitely and expressly intended the result which the lease as drawn effectuates.

■ What we have said disposes of the contention that the statute of frauds presents an obstacle to the holding that the lease is one that is "unitized". The lease is in writing and signed by all the parties, and it is the written terms of the lease, not any mere oral agreement, that imposes upon the "lessee" the obligation to pay the royalties to the "lessor" on the production wherever the well may be located on the lease.

We affirm the case without further comment than to add that we find that Japhet v. McRae, Tex.Com.App., 276 S.W. 669, is not in point.

### Exhibit

"George E. Parker, TO M. Carl Jones and et al. E. C. Ferguson.

"Agreement, Made and entered into this 25th day of June, 1935, by and between George E. Parker, and Mamie W. Parker, his wife, Willie Parker, and Lelia May Parker, his wife, Mrs. Elizabeth P. McGee, and Edwin McGee, her husband, Erbert (Erby) Parker, single, and Mrs. Willie Squyers, and R. C. Squyers, her husband, of Cass County, Texas, party of the first part hereinafter called Lessor (whether one or more), and McCarl Jones and E. C. Fer-

guson, both of Shreveport, Louisiana, party of the second part, Lessee.

"Witnesseth: that the said Lessor, for and in consideration of Three Thousand & Fifty ($3050.00) Dollars, cash in hand paid, and other good and valuable considerations, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, on the part of the Lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said Lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain land situated in the County of Cass, State of Texas, described as follows, to-wit:

"Being two hundred and forty four (244) acres of land, more or less, out of the Greenham Crowder Survey, being fully described in a deed from C. L. Shelton and wife, I. M. Shelton, to J. B. Parker of date April 13th, 1903, duly recorded in the Deed Records of Cass County, Texas, in Vol. B–3, page 289, and deed from L. W. Parker and wife, S. I. Parker, to J. P. Parker, of date February 9th, 1907, duly recorded in the deed Records of Cass County, Texas, in Vol. Q–3, page 606, less 14 acres deeded by J. P. Parker to W. P. Parker, as per deed of December 30th, 1910, duly recorded in the Deed Records of Cass County, Texas, in Vol. Q–3, page 609, reference being hereby made to the deeds referred to for a full description of the land and premises to which this lease applies.

"It is the intention of the parties that this lease cover and apply to all lands whatsoever owned by the lessors in the said Greenham Crowder Survey, Cass County, Texas, whether specifically described herein or not, or whether specifically described in the deeds to which reference is hereinabove made or not. Containing 244 acres, more or less.

"It is agreed that this lease shall remain in force for a term of five years from this date (hereinafter called 'primary term') and as long thereafter as oil, gas or either of them is produced from said land by Lessee or the obligations in lieu of production are fulfilled.

"In consideration of the premises the said Lessee covenants and agrees:

"(1) To deliver to the credit of Lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises.

"(2) To pay to Lessor at the rate of Two Hundred ($200.00) Dollars per year, payable quarterly, for each well producing gas (whether casinghead gas or otherwise) while such gas is not being utilized or sold off the premises, whether before pipe line connection or during subsequent suspension of withdrawal, but during the time such gas shall be utilized or sold off the premises the royalty above named shall cease and the Lessor shall be paid one-eighth (1/8) of the value of such gas in its natural state (including gasoline, whether same be recovered by drips or through an absorption plant or by any other process), calculated at the rate of three (3¢) cents per one thousand cubic feet, corrected to two pounds above atmospheric pressure, and Lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the well at his own risk and expense.

"It is agreed that taxes levied on the severance or production of oil and gas hereunder shall be due and payable in the following proportions:

"One-eighth by the Lessor, and seven-eighths by the Lessee.

"If drilling operations are not commenced on said land on or before the 25th day of June, 1936, this lease shall then terminate as to both parties, unless Lessee shall pay or tender to Lessor or to the Credit of Lessor in Atlanta National Bank at Atlanta, Texas, (which bank is Lessor's agent) the sum of Two Hundred Forty Four Dollars ($244.00), (hereinafter called 'rental'), which shall extend for twelve months the time within which drilling operations may be commenced. Thereafter, annually, in like manner, and upon like payments or tenders, the commencement of drilling operations may be further deferred for periods of twelve months during the primary term. The payments or tenders of rental may be made by the check or draft of Lessee mailed or delivered to said Bank, on or before such date of payment. Drilling operations hereunder shall be deemed to be commenced when the first material is placed on the ground. Notwithstanding any devolution,

change or division in the ownership of said land, the payments or tenders of rental in the manner herein provided shall be binding on the successors, assigns or legal representatives of Lessor. If such bank (or any successor bank) should fail, liquidate or be succeeded by another bank, Lessee shall not be held in default for failure to make such payments or tenders until thirty days after Lessor shall deliver to Lessee an instrument in writing, duly executed and acknowledged, naming another bank as agent to receive such payments or tenders. And it is understood and agreed that the consideration first recited herein the down payment, covers not only the privilege granted to date when said rental is payable as aforesaid, but also Lessee's option of extending that period as aforesaid, and any and all other rights herein conferred.

"If prior to the discovery of oil or gas on said land Lessee should drill a dry hole or holes thereon, this lease shall not be terminated thereby, if Lessee, on or before the next ensuing rental paying date commences further drilling operations or commences or resumes the payment of rentals. If after the discovery of oil or gas the production thereof should cease from any cause, this lease shall not be terminated thereby if Lessee commences additional drilling operations within sixty days thereafter, or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the next ensuing rental paying date, or fulfills the obligations in lieu of drilling or production. If at the expiration of the primary term oil or gas has not been found on said land, but Lessee is then engaged in drilling operations thereon, this lease shall remain in force so long as drilling operations are prosecuted, and, if they result in the finding of oil or gas, so long thereafter as oil or gas is or can be produced from any well on said land, but if such well, being drilled when the primary term expires, then Lessee shall have the option to commence other drilling operations within sixty days from the completion or abandonment of such attempt, for drilling of another well on said land in search of oil, gas or other minerals and in like manner this lease may be maintained in existence after the primary term by the drilling of other wells until oil, gas or other minerals are found in paying quantities, provided not more than sixty days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of another.

"The Lessee shall have the exclusive right to take all waste oil, from its own wells, or coming on this property from other sources and agrees to pay to Lessor an equal one-eighth thereof, if utilized or sold.

"If said Lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the Lessor only in the proportion which their interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of cost, gas, oil and water produced on said land, also waste oil, for their operations thereon, except water from wells of Lessor.

"When requested by Lessor, Lessee shall bury their pipe lines below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without the written consent of the Lessor.

"Lessee shall pay for damages caused by their operations to growing crops on said land.

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the Lessee until after the Lessee has been furnished with a written transfer or assignment, or a true copy thereof; and it is hereby agreed in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease is so far as it covers a part or parts of said lands upon which said Lessee or any assignee thereof shall make due payment of said rental.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor, by payment, any mortgage, taxes or other liens on the above described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof.

"In Testimony Whereof, We Sign, this the 25th day of June, 1935.
"$3.50 in Revenue Stamps
"Duly Cancelled.

> "George E. Parker
> "Mamie W. Parker
> "Erbert Parker
> "Willie Parker
> "Lelia Mae Parker
> "R. C. Squyres
> "Willie Squyres
> "Edwin (J) McGee
> "Mrs. Elizabeth P. McGee,
> "Lessors."