**STANDARD OIL COMPANY OF TEXAS et al., Appellants,**

v.

**Paul DONALD et al., Appellees.**

No. 15974.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 20, 1959.

Rehearing Denied March 20, 1959.

Baker, Botts, Andrews & Shepherd, and J. C. Hutcheson, III, Houston, for appellant Standard Oil Co. of Texas.

Reeves & Reeves and William S. Reeves, Tyler, for appellant Sells Petroleum Incorporated.

Donald & Donald, and J. M. Donald, Bowie, for appellees.

BOYD, Justice.

On February 21, 1945, appellees Paul Donald and J. M. Donald owned 162.7 acres in Calhoun County School Land Survey in Montague County, consisting of 80 acres in Block 8, 2.7 acres in Block 9, and all of Block 13, being 80 acres. The tracts are contiguous.

On said date appellees conveyed to T. A. Heartwell "an undivided 40 acre interest in and to all of the oil, gas and other minerals in, on and under and that may be produced from" said Block 13. The three tracts were then under a single oil and gas lease owned by Continental Oil Company, and the sale was subject to the terms of the lease, with future delay rentals payable to Heartwell to the extent of his interest. It was further provided in the conveyance that "in the event that the above described lease for any reason becomes cancelled or forfeited then in that event the grantors herein reserve the right to execute oil, or gas, or other mineral leases on said land without the necessity of the grantee herein joining in the execution thereof; but it is understood that the said grantee shall receive his pro rata part of the bonus and all future rentals on said land for oil, gas or other mineral privilege" .to the extent of his interest; it was further provided that the grantee, by accepting the deed, "fully acknowledges the right of the

grantor to lease said land for any consideration as to them may seem adequate without the said grantee joining the execution thereof."

The lease held by Continental expired, and on May 24, 1951, appellees leased the three tracts of land to Standard Oil Company of Texas by the execution of a single lease covering the three tracts. The lease designated appellees "and all other parties executing this lease or any counterpart thereof" as "Lessor"; and provided that royalties were to be paid to "Lessor"; that "If more than one person executes this lease as Lessor, or is now ·or shall hereafter become entitled, through change of ownership or otherwise to share in or receive the benefits accruing to Lessor hereunder, this lease shall nevertheless always be operated and developed by Lessee as a single tract, without regard to any such division in or change of interest or ownership, or right to receive payments, which shall not operate to enlarge the obligations or diminish the rights of Lessee." No other person executed the lease or any counterpart thereof. The bonus of $15 per acre was distributed by Standard among the owners of the mineral interests in the proportion which each interest bore to the 162.7 acres. Sells Petroleum Incorporated owns an undivided 10 acre interest in Block 13.

Shortly after the execution of the lease appellees and all others owning mineral interests in Block 13 as assignees of Heartwell, including Sells Petroleum Incorporated, executed instruments denominated "Ratification and Rental Division Order," which were identical except for dates, names, and acknowledgments. These instruments directed Standard to pay rentals under said lease to the owners of the mineral interests in the three tracts, which fractional interests were therein specified, and provided that "Payments so made will fully protect said lease as to the respective interests of the undersigned, each of whom certifies as to the interest set opposite his name

only. This division covers delay rentals only and shall not affect royalties. The undersigned hereby *grant, lease and let* exclusively unto Lessee all of said land for the uses and purposes and upon the terms and provisions specified in said lease, and Lessee agrees to comply with the covenants contained therein. The provisions hereof shall be binding upon the undersigned, even though this instrument is not executed by all the above named parties. The filing by Lessee of this instrument in the office of the County Clerk of any County in which said land or a part thereof is situated, shall constitute an acceptance hereof by Lessee." The instruments were filed by Standard in the office of the County Clerk of Montague County.

Production has been obtained under said lease on the 80 acres in Black 8.

This suit was brought by appellees against Standard, Sells and others not parties to the appeal, in form of trespass to try title and for judgment declaring the ownership of the parties in the oil, gas, and other minerals in the three tracts of land, and declaring the parties entitled to receive the royalties payable under the lease. Standard is not paying any royalties, but is awaiting the final determination of the issues.

Appellees pleaded that the royalty from production on the 80 acres in Block 8 is payable exclusively to the owners of the mineral interests therein; and that if production is obtained on Block 9 or Block 13, the royalty from either Block will be payable to the owners of the mineral interests in such Block. Standard and Sells pleaded that the lease with the ratifications pooled or communitized the royalty interest in the three tracts and that the royalty from production on any tract is payable to the owners of interests in either tract in the proportion which the interest of each bears to the whole 162.7 acres, and that Sells was entitled to 10/162.7ths of the royalty from production on the 80 acres in Block 8.

Trial was to the court and judgment was rendered that the royalty interests were not

pooled or communitized and that the owners of the mineral interests in Block 8 are entitled to all the royalty payable from that tract, and that if production is obtained on either of the other tracts, the royalty from each tract shall be payable to the owners of the mineral interests in each tract on a pro rata basis. The court filed findings of fact and conclusions of law.

We think the effect of the lease together with the ratifications was to pool or communitize the royalty in the three tracts, and that each owner in either tract is entitled to the proportion of the royalty from any tract which his interest bears to the 162.7 acres.

█ It is settled by the decisions in Parker v. Parker, Tex.Civ.App., 144 S.W.2d 303, error refused, French v. George, Tex. Civ.App., 159 S.W.2d 566, error refused, and Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914, 916, that an ordinary oil and gas lease when executed by all the owners of different mineral interests in two or more tracts, is effective to pool the royalties payable under the lease. In the last cited case the court said:

"It may be noted here that respondents suggest a re-examination of the Parker and George cases on the theory that the courts should not attribute to lessors jointly executing a general form lease, without more, an intent to pool or unitize their properties; that the language of the general form lease was never intended to effect or to operate as a pooling agreement. This argument is not entirely unappealing. The Texas rule in this respect is not of universal application. See 116 A.L.R. 1267 et seq. On the other hand, the law of the Parker and George cases has now become a rule of property in this state and 'should not be changed in the absence of other controlling circumstances, even though good reasons might be given for a different holding.' Tanton v. State National Bank of El Paso, 125 Tex. 16, 79 S.W.2d 833, 834 [93 A.L.R. 1093]. No doubt many such leases have been executed and delivered by lessors and accepted by lessees in reliance on the holdings in the Parker and George cases that they effectively unitize the land included therein. It must therefore be held that when the parties executed the lease in 1932 they intended to create a unitized lease with all of the usual incidents and legal consequences thereof.

"Some of the legal consequences of a unitized lease as between the lessors on the one hand and the lessees on the other, in the absence of express agreement to the contrary, are as follows: the life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included in the lease; the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the lease; production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts; the lessee is relieved of the usual obligation of an implied covenant for reasonable development of each tract separately; wells may be located without reference to property lines; the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on one or more of such tracts. As between the lessors themselves, each relinquishes his right to have his own tract separately developed, his right to receive all of the royalties from production from wells on his own tract, and his right to have wells drilled on his tract off-setting other wells on the leased premises, and each gains the right to share proportionately in royalties from wells on the other included tracts. In short, the parties by the execution of a unitized

lease agree that production of oil or gas from wells located on any tract included in the lease will be regarded during the life of the lease as production from each and all other tracts included therein."

In Landgrebe v. Rock Hill Oil Company, Tex.Civ.App., 273 S.W.2d 636, all owners, except one, of the mineral interests in several tracts joined in the execution of a lease. Later, the one not joining executed a ratification of the lease. Production was obtained on one tract, and it was held that the royalty was pooled.

In Ward v. Gohlke, Tex.Civ.App., 279 S.W.2d 422, 426, error refused, some of the parties owning interests in four tracts joined in a lease covering all the tracts. Other owners signed counterparts of the lease. One did not join in the lease or sign a counterpart, but later executed a ratification of the lease. The ratification instrument recited that a dispute existed as to whether the royalty should be computed on a communitized basis, and that the ratification instrument was executed without prejudice to this party's right to claim that the royalty should be computed on an unpooled basis. It was held that the royalty was pooled. Said the court:

"The last paragraph of the W. J. Stork, Jr., ratification, above quoted, was clearly a 'no prejudice clause.' While Stork ratified the primary lease *as written*, it was without prejudice to his *claim* that the royalty interests under the primary lease were not pooled. Neither this clause nor the instrument taken as a whole provides that Stork's royalty interest (with the exception of the override) shall not be pooled, but leaves the matter to a construction of the primary instrument."

■■ Appellees insist that the lease did not change the rights of the other owners of royalty interests, and that no act of the other owners could change the lease contract made by appellees. Whether appel-

lees could pool the royalty interests against the wishes of the other owners is not before us for decision. We agree with appellees' general proposition that a party is bound, if at all, by his own contract, and not by one made by others. No intention to communitize the royalties would have been manifested had appellees excluded from the lease the mineral estate of the other parties, or had they executed a separate lease on Block 13. But they leased all the interests in the three tracts, which they had the right and power to do, and the owners of the other interests ratified appellees' act. They thereby became parties to the lease as effectually as they would have been had they joined in its original execution.

Appellees argue that Japhet v. McRae, Tex.Com.App., 276 S.W. 669, announced a rule which is inconsistent to that anounced in the cases cited above; and that Japhet v. McRae has never been overruled. In that case, during the existence of a lease made by the sole owner of a tract of land, and before production, the owner sold the minerals under a part of the tract, on which part production was thereafter obtained under the original lease. It was held that the royalty was not pooled, since at the time the lease was executed there was common ownership of the land and minerals covered by it. It could not be said that the execution of the lease manifested an intention to pool royalty with another owner, for there was none. Japhet v. McRae was distinguished in Parker v. Parker, French v. George, and Landgrebe v. Rock Hill Oil Company, all supra.

Appellees' final contention is that they did not purport to lease any interest except their own. We do not find such allegation in their pleadings or any finding to that effect by the court. There is no claim that the lease contract executed by appellees included any provisions which should have been omitted, or omitted any which should have been included. The case depends, we think, upon the proper construction of the lease and the ratification instruments.

The judgment is reversed and judgment is here rendered declaring that royalties from production on any part of the three tracts shall be payable to the respective owners of the mineral interests in the proportion which each owner's interest bears to the total acreage of the three tracts.