**J. M. RUIZ, Appellant,**

v.

**J. C. MARTIN, Jr., et al., Appellees.**

**No. 15813.**

Court of Civil Appeals of Texas,
San Antonio.

Nov. 9, 1977.

Rehearing Denied Dec. 14, 1977.

Carlos Castillon, Mann, Castillon, Freed & Kazen, Laredo, for appellant.

R. J. Goodman, Goodman & Cronfel, Laredo, for appellees.

KLINGEMAN, Justice.

This is a suit involving the apportionment of royalties under an oil, gas, and mineral lease. The lease involved was given by appellant's predecessor in title and covered three tracts of land aggregating 600 acres, which lands are presently owned by appellant, J. M. Ruiz. Appellees, J. C. Martin, Jr. and Dora M. Russell, are the owners of an undivided one-half interest in the oil royalties, gas royalties, and royalties in other minerals in a tract of 463.8 acres, described as Tract I in such lease. Such royalty interest is a perpetual non-participating royalty interest. This interest was outstanding at the time the oil, gas, and mineral lease was given and at the time the appellant purchased the property. During the term of the lease, a producing gas well was brought in on the tract described as Tract II in such lease. Appellant asserted that he was entitled to all of the royalties from gas produced from such well, and appellees asserted that they had an interest in such royalties. Gulf Oil Corp., the purchaser of the gas produced from such well, filed this suit as an interpleader suit against both appellant and appellees, seeking a determination of the ownership of the royalties accruing with respect to the production of gas from the gas well. The case was submitted to the trial court on an agreed statement of facts. After a hearing, the trial court entered judgment that appellees are entitled to a .386500 [½ × $^{463.8}/_{600}$] part of the royalties on all oil, gas, and other minerals produced from such well from and after December 9, 1974 and so long thereafter as there is production from such well.

On June 16, 1959, appellees, J. C. Martin, Jr. and Dora M. Russell [Dora Martin Bunn], together with Minnie B. Martin, whose interest is now owned by appellees, conveyed to Isuaro Martinez, Jr. a tract of 463.8 acres of land. In such deed appellees reserved to themselves an undivided one-half interest in the oil royalties, gas royalties, and royalties in other minerals in and to said 463.8-acre tract, perpetually. Appellees have continued to own such interest and are presently the owners. The fee simple title to such tract, less the reserved

royalty interest of appellees, was conveyed by Martinez to Salinas, by Salinas to Villarreal, and by Villarreal to appellant, J. M. Ruiz. The oil, gas, and mineral lease involved was given by Villarreal on June 14, 1968, and covered three tracts of land aggregating 600 acres, which included the 463.8-acre tract described as Tract I. A gas well was completed on Tract II on November 14, 1974. By an instrument dated December 9, 1974, appellees ratified the oil, gas, and mineral lease involved "to the same extent as if they had originally joined in the execution thereof." Notice was timely given to appellant.

This lease is in a form sometimes referred to as a Commercial Producer's 88 lease. It contains an unless clause, ⅛th landowner's royalty clause, and a pooling or unitization provision, but does not contain an entirety clause.[1] Ruiz is a fee simple owner of Tracts II and III, and also owns Tract I [463.8 acres], subject to the reserved one-half non-participating royalty interest owned by appellees.

By two points or error, appellant asserts that the trial court erred in holding that (1) appellees are entitled to a .386500 [or ½ × 463.8⁄600], of the royalties of production from the Ruiz #1 well from and after December 9, 1974, for the reason that such holding is contrary to the non-apportionment rule of law applicable in Texas; (2) appellees' ratification of the 1968 mineral lease on December 9, 1974 effected a cross-conveyance of royalty agreement between them and appellant, for the reason that the 1968 mineral lease did not purport to bind appellees to a cross-conveyance of royalties as to the lease in its entirety, nor did appellant otherwise agree to such cross-conveyance of the royalties in Tract II described in said lease.

We have concluded that the trial court's judgment is correct.

Appellant relies heavily on *Japhet v. McRae,* 276 S.W. 669 (Tex.Comm.App.1925, jdgmt. adopted), and asserts that it is controlling. We do not agree.

In *Japhet,* the owner of a 15-acre tract of land executed an oil, gas, and mineral lease covering the entire 15 acres. The lessor-landowner conveyed the south 10 acres to one party and the north 5 acres to another party. A producing oil well was completed on the 10-acre tract, and the owner of the 5-acre tract contended that he was entitled to participate in the royalties payable under the lease. The court applied a non-apportionment rule and held that each owner was entitled to all of the royalties on the oil produced from his particular tract. The court placed much emphasis on the fact that the rule of capture prevails in this State and that there was no presumption of drainage. *Japhet* differs from our case in a number of respects. In *Japhet,* the subdivision of ownership occurred after the lease was granted, while in the case before us the subdivision of ownership of Tract I occurred long before the granting of the lease and also before appellant purchased the land. In our case, the owners of the one-half interest in the oil, gas, and other minerals [appellees] timely ratified and confirmed the lease, which is not involved in the *Japhet* case.

We base our holding herein on the following cases: *Montgomery v. Rittersbacher,* 424 S.W.2d 210 (Tex.1968); *Southland Royalty Co. v. Humble Oil & Refining Co.,* 151 Tex. 324, 249 S.W.2d 914 (1952); *May v. Cities Service Oil Co.,* 444 S.W.2d 822 (Tex. Civ.App.—Beaumont 1969, writ ref'd n.r.e.); *Guaranty Nat. Bank & Trust of Corpus Christi v. May,* 395 S.W.2d 80 (Tex.Civ.App. —Waco 1965, writ ref'd n.r.e.); *Standard Oil Co. of Texas v. Donald,* 321 S.W.2d 602

1. The pooling provision authorizes pooling or unitization in units of 40 acres for oil, and 640 for gas. It is for a primary term of ten years, and is in the usual form of Commercial Producer's 88 unless leases, which provide that the lease can be kept in force and effect by (1) timely paying the delay rental payments during the primary term, or (2) obtaining production during such term, and for so long thereafter as oil, gas, and other minerals are produced from said land or lands which said land is pooled. Under such lease one producing well in paying quantities on any portion of the lease would maintain the lease in force and effect as long as such production continues.

(Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.); *French v. George,* 159 S.W.2d 566 (Tex.Civ.App.—Amarillo 1942, writ ref'd); *Parker v. Parker,* 144 S.W.2d 303 (Tex.Civ. App.—Galveston 1940, writ ref'd).

It is well settled by the decisions in this State [*Parker v. Parker, supra; French v. George, supra;* and *Southland Royalty Co. v. Humble Oil & Refining Co., supra*] that an ordinary oil, gas, and mineral lease, when executed by all the owners of different mineral interests in two or more tracts, is effective to pool the royalties payable under the lease. In *Southland Royalty Co., supra,* the Supreme Court said:

> It may be noted here that respondents suggest a re-examination of the *Parker* and *George* cases on the theory that the courts should not attribute to lessors jointly executing a general form lease, without more, an intent to pool or unitize their properties; that the language of the general form lease was never intended to effect or to operate as a pooling agreement. This argument is not entirely unappealing. The Texas rule in this respect is not of universal application. . . On the other hand, the law of the *Parker* and *George* cases has now become a rule of property in this state and 'should not be changed in the absence of other controlling circumstances, even though good reasons might be given for a different holding.' . . . No doubt many such leases have been executed and delivered by lessors and accepted by lessees in reliance on the holdings in the *Parker* and *George* cases that they effectively unitize the land included therein. 249 S.W.2d at 916.

We think the language of the Supreme Court in *Montgomery v. Rittersbacher, supra,* is particularly significant. In such case, the Court said:

> This Court has never been called upon to decide the question of whether a holder of non-participating royalty has an option to make an entirety clause operative on his interest. We think that the non-participating royalty owner, so far as the existence of an option is concerned, occupies a comparable position to that of a cotenant under a lease made by his cotenant or a non-participating royalty owner under a pooling agreement made by the holder of the executive rights. As to the cotenant, it has been held that he has the right to ratify or repudiate a lease made by his cotenant which covers his interest. . . . Likewise, in the pooling area, if a non-participating royalty owner ratifies a pooling agreement, either by joining in the execution of the agreement or by accepting royalties from the pool, his interest is bound by the pooling agreement. . . . Therefore, we hold that the non-participating royalty owner has the option to ratify or repudiate a lease containing provisions which as to his interest the holder of the executive rights had not authority to insert in the lease. 424 S.W.2d at 214, 215.

The lease in the case before us has a pooling provision. Such lease does not have an entirety clause, and appellant argues strongly that the absence of an entirety clause is material and controlling. In this connection, the Supreme Court, in *Montgomery v. Rittersbacher,* said:

> We agree that the Respondents, the holders of the executive rights, did not have the power to bind Montgomery's non-participating royalty interest by virtue of the entirety clause alone, but do not agree with their contention that the Petitioner has not 'properly' ratified the lease. *We are of the opinion that the enlargement or diminishment of the rights of a prior non-participating royalty owner can be accomplished by the holder of the executive rights executing an oil, gas, and mineral lease which includes either a pooling clause or an entirety clause, provided the non-participating owner ratifies such action.* (Emphasis added.)

\*   \*   \*   \*   \*   \*

We can see no distinction between the pooling clause, insofar as it has the effect of changing the aggregate ownership of the non-participating royalty owner, and the entirety clause, which, in effect,

would allow the holder of the executive rights to either diminish or enlarge the ownership of that of the royalty owner. In either case, the consent of the owner must be obtained. 424 S.W.2d at 212–213.

There are two other cases, *Guaranty Nat. Bank & Trust of Corpus Christi v. May, supra,* and *May v. Cities Service Oil Co., supra,* which are also analogous. In the first *May* case, May in 1958 executed an oil and gas lease on 401.22 acres, which was composed of five separate tracts. May owned the executive right to lease all five tracts, although several different persons owned the royalty interests in the five tracts. Some of these royalty owners ratified the lease, Koch did not. In 1964, the lessee completed a gas well on a tract in which the royalties were owned by Koch and May. May brought suit, contending that since all the royalty owners did not ratify the lease, no communitized lease came into existence and only Koch and May should be entitled to share in the royalties on the well. The Court stated that while May did have the power to execute the oil and gas lease, the authority to pool the royalty interests only could be granted by the royalty owners jointly executing the lease, or by ratifying the lease. The Court held that the royalty interest could not be unitized or communitized without the joinder or ratification of all the royalty owners, and that ratification by less than all of the owners does not effectuate the pooling. After the first *May* case, Koch attempted to ratify the lease so as to claim his proportionate interest in the entire tracts leased

[other wells had been completed on other tracts]. The trial court held this ratification void under an estoppel theory.[2] The appellate court reversed this part of the trial court's ruling, and held that Koch could not be barred from ratifying the lease. The court pointed out that Koch would be deprived of claiming any benefits under such lease until he ratified the lease, and that once Koch ratifies, he is entitled to a pro-rata payment for future, but not past, production.

■ At the time that Villarreal executed the oil, gas, and mineral lease here involved, appellees were the owners of a one-half royalty interest in a tract described as Tract I in such lease. Villarreal had the executive power to execute such oil, gas, and mineral lease, but did not have the power to pool or unitize the royalty interest as to Tract I without joinder or ratification by appellees. The lease amounted to a proposal or offer by the lessor [Villarreal] to the lessee and appellees to effect or create a community lease and to pool or unitize all of the royalties in all of the tracts described in the lease. Appellees timely ratified the lease. Such ratification provided that the oil, gas, and mineral lease was ratified fully and completely to the same extent as they had originally joined in the execution thereof.

Appellees were the owners of an interest in land included in the lease [an undivided one-half interest in the oil royalties, gas royalties, and other minerals in Tract I] at the time the lease was executed and are still the owners. If appellees had joined in the execution of the original oil and gas

---

2. The estoppel theory finds support in the case of *Nugent v. Freeman,* 306 S.W.2d 167 (Tex. Civ.App.—Eastland 1957, writ ref'd n.r.e.). In *Nugent,* Freeman executed an oil and gas lease which covered a 120-acre tract and a 30-acre tract. The Nugents owned a non-participating royalty interest in the 30-acre tract. The lessee drilled and completed three oil wells on the 120-acre tract, but none on the 30-acre tract. The Nugents stood by with full knowledge of these facts for more than two years without ratifying the lease, and then brought a suit claiming a royalty interest in the entire lease. The court held that the filing of the suit came too late, and said: "They held this position for

more than two years without attempting in any way to ratify the attempted pooling of the mineral interests by Freeman. They never did anything in the way of ratifying the pooling arrangement until long after the lease had been completely developed. * * * [I]f it should be held that by the execution of the lease which covered the entire 150 acres there was an offer by Freeman to pool the two tracts there is no showing that the Nugents ever accepted said offer. As has heretofore been stated, the filing of this suit after the lease had been fully developed is not a sufficient acceptance to meet the requirements of the law." 306 S.W.2d at 170–171.

844

lease, as lessors, at the time of the execution of the lease, there is no question that their interests would have been pooled or unitized as a matter of law with all other interests in all three tracts covered by the lease. Instead of joining in the original, they timely ratified it. Under such circumstances, the effect of such ratification is the same as execution of the original lease.

A case closely in point is *Standard Oil Co. of Texas v. Donald, supra.* In this case, Paul and J. M. Donald owned 80 acres in Block 8, 2.7 acres in Block 9, and 80 acres in Block 13, which tracts were contiguous. In 1945 the Donalds conveyed to Heartwell an oil and gas interest in 40 acres out of Block 13. At the time of the conveyance, the three tracts were under a single oil and gas lease to Continental Oil Co. The conveyance to Heartwell provided that in the event that the Continental lease expired, the Donalds would have the executive right to lease the property. Continental's lease expired and the Donalds executed an oil and gas lease, covering all three tracts, to Standard. Shortly after the execution of the lease, the assignees of Heartwell's oil, gas, and mineral interest executed ratifications of the lease. Production was obtained under the lease on the 80-acre tract in Block 8. The Donalds contended, and the trial court held, that the production on this 80-acre tract should be payable exclusively to the owners of the mineral interest on such tract, and that the royalty interests were not pooled or communitized. The Court of Civil Appeals reversed and said:

> We think the effect of the lease together with the ratifications was to pool or communitize the royalty in the three tracts, and that each owner in either tract is entitled to the proportion of the royalty from any tract which his interest bears to the 162.7 acres.

> \* \* \* \* \* \*

> No intention to communitize the royalties would have been manifested had appellees excluded from the lease the mineral estate of the other parties, or had they executed a separate lease on Block 13. But they leased all the interests in the

three tracts, which they had the right and power to do, and the owners of the other interests ratified appellees' act. They thereby became parties to the lease as effectually as they would have been had they joined in its original execution. 321 S.W.2d at 605, 606.

The trial court correctly held that appellees are the owners of a .386500 part [½ × 463.8/600] of the royalties on oil, gas, and other minerals from Ruiz #1 well due and to become due from and after December 9, 1974 [the date of appellees' ratification] under the Villarreal oil, gas, and mineral lease of June 14, 1968.

The judgment is affirmed.