Dorothy **LONDON and McCord Exploration Company,**
**Appellants,**

v.

**Dr. George MERRIMAN, Jr., Cornelia Matthews, Beatrice Harris, Appellees.**

**No. 13–87–127–CV.**

Court of Appeals of Texas,
Corpus Christi.

May 26, 1988.

Rehearing Granted in Part and Denied in Part June 23, 1988.

Second Motion for Rehearing Denied Aug. 31, 1988.

James R. Harris, J. Norman Thomas, Harris, Browning, Jordan & Hyden, Corpus Christi, Gary L. Crofford, Harpold, McDonald, Fitzgerald & Hall, Houston, for appellants.

Howard P. Newton, Matthews & Branscomb, San Antonio, James L. Walker, Matthews & Branscomb, Corpus Christi, for appellees.

Before NYE, C.J., and UTTER and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Appellant, Dorothy London, asks this Court to determine her rights as lessor under an oil and gas lease, as well as the rights of the non-participatory royalty interest owners (the Merrimans). London appeals from a judgment awarding the Merrimans gas royalties. We affirm.

London owns two adjoining tracts of land and holds the executive right (the right to lease) to all the minerals. She owns a $\frac{3}{16}$ royalty interest in the eastern tract and a $\frac{1}{8}$ royalty interest in the western tract. The Merrimans own a $\frac{1}{16}$ non-participating (no right to lease) royalty interest in the western tract, created by reservation when Mr. Merriman conveyed the land to London.

In 1980, London executed a single oil and gas lease which included both tracts. The lessee later assigned its interest to the McCord Exploration Company. In 1982, McCord brought in successful gas wells on the eastern tract, in which London owns all the royalty interest. No wells have been drilled on the western tract.

In 1983, the Merrimans sued McCord and London, claiming that McCord breached a duty to protect the tract in which they owned a royalty interest against drainage by the other tract. In 1984, they successfully sought statutory forced pooling of their royalty interest with London's by the Railroad Commission, enabling them to share in the royalties paid on the wells since the effective date of the Commission's order, March 7, 1984. The Merrimans pursued their suit for a common law recovery of royalties allegedly lost by drainage until the effective date of the order. In 1986, they filed a supplemental petition, alleging an alternative theory—

that they had ratified the lease between McCord and London and so had accepted London's alleged offer in the lease to pool their royalty interest with hers.

The case proceeded to trial on both pled theories. The ratification theory was tried to the court, while the breach of duty theory was tried to the jury. The Merrimans were successful on both. They elected to have judgment on the ratification theory, and the trial court awarded them $390,-051.35 for royalty payments due them from the time the wells began to produce until the Railroad Commission ordered pooling.

London's first two points of error involve the issue of ratification, tried to the court. In its judgment, the court found that the Merrimans ratified the lease by filing suit on July 14, 1983, entitling them to their share of royalties from that date until the effective date of the Railroad Commission's forced pooling order, March 7, 1984. London asserts that the oil and gas lease by its terms precluded ratification and the consequent pooling of the royalty interests.

The oil and gas lease executed by London is a standard "Producer's 88" lease. It contains a provision which authorizes the lessee, at its option, "to pool or combine the acreage covered by this lease, or any portion thereof, as to oil and gas, or either of them, with any other land ..." if certain conditions exist.[1] If pooling occurs, the lease provides that the royalties shall be paid on a pro-rata, acreage basis; payments are to be made depending on the number of acres each royalty interest owner owns in the pooled unit.

■ Absent consent, the executive does not have the legal right to authorize the lessee to pool the royalty rights of the non-participating royalty interest owner with other royalty interest owners. *Montgomery v. Rittersbacher*, 424 S.W.2d 210, 215 (Tex.1968); *Brown v. Getty Reserve Oil, Inc.*, 626 S.W.2d 810, 814 (Tex.App.—Amarillo 1981, writ dism'd.). A lease which purports to do so is essentially an offer by the lessor to the other royalty interest owners to create a community lease by ratifying the lease; if they do ratify it, the lease effects a cross-conveyance of interests and a pooling or combining of royalty interests. See *Ruiz v. Martin*, 559 S.W.2d 839, 842–44 (Tex.Civ.App. —San Antonio 1977, writ ref'd n.r.e.) and cases cited therein.

■ This result follows from the well-established line of cases which holds that when an ordinary oil and gas lease is executed by all the owners of different mineral interests in two or more tracts, the royalties payable under the lease will be pooled. In other words, all royalty interest owners in the land subject to the lease share in production no matter where the well is drilled on the leasehold. By an effective ratification of the lease after its creation, the non-executive accomplishes this result just as if he had been a party to the lease. *Id.* at 844; *Standard Oil Co. v. Donald*, 321 S.W.2d 602, 605–606 (Tex.Civ.App.Fort Worth 1959, writ ref'd n.r.e.).

■ By its judgment, the trial court held that this rule applied and that the Merrimans' ratification was legally effective to entitle them to share in production from the eastern tract.[2]

■ The instant case is nearly indistinguishable from *Ruiz*, where the court there also interpreted a Producer's 88 lease. The lease included several royalty interest owners and covered separate tracts, and a gas well was brought in on one of the tracts.

---

**1.** Although pooling and unitization technically have different meanings, the terms are often used interchangeably to describe cross-conveyances of mineral or royalty interests by separate owners in order to share the income from production of wells drilled anywhere on the consolidated tract. H. Williams & C. Meyers, 8 *Oil and Gas Law* 727–28 (1987); *see Whelan v. Manziel*, 314 S.W.2d 126, 132–34 (Tex.Civ.App.— Texarkana 1958, writ ref'd n.r.e.). Thus, the separate lands and royalties are said to be combined, or "pooled." Throughout this opinion, we refer to pooling and unitization in this sense unless the context otherwise indicates.

**2.** Of course, ratification is not a one-way street. By ratifying a lease and effecting a cross-conveyance of royalty interests, the nonparticipating royalty interest owner also enables the executive royalty interest owner to share in production from the ratifier's tract. *See Montgomery*, 424 S.W.2d at 215.

The owner of a non-producing tract claimed a part of the royalties from the well under the pooling clause. The court, interpreting *Montgomery*, held that the non-participating royalty owner was able to ratify the lease and so claim a percentage of the royalty. *See also Standard Oil Co. v. Donald*, 321 S.W.2d at 606. We have carefully analyzed *Ruiz* and agree that it was correctly decided.

London argues, however, that a clause in the lease here distinguishes *Ruiz*. At the end of the same paragraph which grants the power to pool to the lessee, the lease contains a clause which London characterizes as a "non-unitization" or "anti-communitization" clause:

> If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interest as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool as provided above with consequent allocation of production as above provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

No such clause appears in the *Ruiz* opinion.

London contends that this clause negated any intent to pool or unitize the royalties and keeps the royalties separate, so that the Merrimans are entitled to recover only for production from the western tract. The Merrimans counter that the clause is ineffective and they are entitled to a proportionate share of royalty from production anywhere on the leasehold, under *Ruiz* and *Montgomery*.

We agree with the Merrimans. The purported non-unitization clause simply provides that no pooling or unitization of royalties is intended "merely from" the inclusion of the two tracts in one lease. We agree that no such pooling results *merely* because the lease included two tracts. Rather, it results from the previous lease provisions which authorize the unitization or pooling of the royalties should the lessee pool the tracts of land in any fashion. The purported non-unitization clause expressly does not detract from this authorization.

Pooling of the royalties resulted from London's attempted authorization for the lessee to pool the Merrimans' interest without their consent, enabling the Merrimans to ratify the unauthorized act. *Montgomery*, 424 S.W.2d at 215;[3] *Ruiz*, 559 S.W.2d at 842–44.

Our decision is strengthened but is not dependent upon the case of *Verble v. Coffman*, 680 S.W.2d 69 (Tex.App.—Austin 1984, no writ). The executive there owned a tract of land subject to two outstanding non-participating royalties. The defendants owned one-half of the royalty in the northern portion of the tract, and the plaintiffs owned one-half of the royalty in the southern half. The lessor executed an oil and gas lease containing both a pooling clause and a clause attempting to rebut any presumption that the document was a community lease. In fact, this part of the lease is identical to the purported non-uniti-

---

[3] The Supreme Court in *Montgomery* suggested that if the executive wishes to prevent this result, he should take "affirmative steps" to exclude the interest from the operation of the entirety clause or pooling clause. *See Montgomery*, 424 S.W.2d at 213. The Court did not provide guidance on what those steps might be. However, the Court of Civil Appeals in *Standard Oil Co. v. Donald*, 321 S.W.2d 602, 606 (Tex.Civ. App.—Fort Worth 1959, writ ref'd n.r.e.), suggested the exclusion of the mineral estate of the other interest owners from the lease, or the execution of separate leases. *Id.* at 844, *cited in Ruiz, 559 S.W.2d* at 844. It may also be possible for a lease covering more than one tract and including more than one royalty interest to expressly negate any unauthorized pooling of the non-executive interest, but because of its pooling clause, the standard form Producer's 88 lease involved here does not do so. It is ill-equipped to handle the complexities inherent in multi-tract and multi-royalty situations.

Dean Ernest Smith advances the theory that the lessor of a non-producing tract cannot exclude the non-executive's interest from a pooled unit without the non-executive's consent. Smith, *Implications of a Fiduciary Standard of Conduct for the Holder of the Executive Right*, 64 Texas L.Rev. 371, 391–95 (1985).

zation clause of the instant case, quoted above. Apparently at the lessor's request, both royalty owners ratified the lease.

The lessee drilled a well on the northern portion of the tract. Normally, the non-apportionment rule would apply, and royalty from the well's production would be paid only to the owners of interests in the land on which the well was located. The plaintiffs, with royalty rights in only the southern half of the tract, claimed that by ratifying the lease they had ratified the pooling clause and so should share the royalty authorized by pooling. The defendants, who owned one-half of the royalty in the northern portion of the tract where the well was located, relied on the non-unitization clause. Like London here, they contended that the clause prevented any sharing of royalties among separate tracts. *Verble*, 680 S.W. 2d at 70; Smith, 64 Tex.L.Rev. at 394.

The Austin Court of Appeals held for the plaintiffs. The Court concluded that by ratifying the lease, the owners of royalty in the southern half of the tract were entitled to treat their ratification as a pooling of interests and thus were entitled to share in the royalty on production from the northern half of the leased premises. The Court cited *Montgomery, Ruiz,* and *Standard Oil Co.* but did not make clear why ratification was effective but the non-unitization clause was not. We have sought to fully elaborate our rationale here, and believe it explains *Verble.*[4]

London's lease with McCord attempted to authorize an unauthorized act, thereby offering the Merrimans an opportunity to ratify the lease. The Merrimans accepted the offer by ratifying the lease, which the trial court found occurred when suit was filed in 1983. Bringing suit constitutes an implied ratification of an unauthorized act. *Montgomery*, 424 S.W.2d at 214. By ratifying the lease, the Merrimans became a

party to it, and the rule that the execution of an oil and gas lease by more than one mineral interest owner effects a pooling of their interests applied. We overrule London's first two points of error.

■ London's third point of error complains that the court erred in entering judgment for accrued royalties when the jury had awarded the Merrimans money damages against McCord, and the Merrimans never moved the court to disregard the jury verdict. The Merrimans recovered on alternative theories and moved the court to grant judgment on the ratification theory, which was tried to the court. There is no procedural requirement that they also separately move the court to disregard the jury verdict, which would be superfluous. We overrule London's third point.

By her fourth point, London assigns error to the trial court's denial of her defensive issues of accord and satisfaction, laches, waiver and estoppel.

Tex.R.Civ.P. 278 provides that the trial court's failure to submit a question (formerly special issue) raised by the evidence shall not be a ground for reversal unless it was tendered in substantially correct wording. This was formerly found in Rule 279.

■ "Substantially correct" does not mean that the question must be absolutely correct, nor does it mean that the question is sufficient if it merely calls the matter to the attention of the Court. It means one that in substance and in the main is correct, and that is not affirmatively incorrect. *Placencio v. Allied Industrial International, Inc.*, 724 S.W.2d 20, 21 (Tex.1987); *Modica v. Howard*, 161 S.W.2d 1093, 1094 (Tex.Civ.App.—Beaumont 1942, no writ).

Three of the four special issues requested by London involve the handwritten "Memo of Understanding" signed by the

---

4. London urges a different interpretation of *Verble.* She argues that the *Verble* opinion suggests that the lessor expressly offered the non-participating royalty owners the opportunity to ratify the lease, which they accepted. *See Verble,* 680 S.W.2d at 70. Therefore, London concludes, the result reached by the *Verble* court simply followed from that act and not from a *Ruiz* and *Montgomery* analysis of the lease con-tract, and *Verble* is inapplicable to the instant case since no such express ratification offer occurred here. We disagree with this interpretation of *Verble* and note that the court there cited both *Montgomery* and *Ruiz.* In any event, as mentioned above, the result we reach here is not dependent upon *Verble* but upon an independent analysis of the case law.

attorneys for London and the Merrimans. London sought defensive issues involving this agreement, executed during the Railroad Commission hearing, claiming it amounted to an accord and satisfaction of their claim for royalties, waiver of that claim, and estopped them from recovering those royalties.

These defensive issues are different ways of claiming the same thing—that the agreement precluded the Merrimans from recovering royalties. We disagree. The agreement merely states that, in exchange for London's aid in getting forced pooling for the Merrimans, they agree that London had breached no duty owed them, and that they would seek *no damages* from London but would continue their suit against McCord for damages and *for failure to protect their royalty interest.* The Merrimans nowhere agreed that they would not seek to recover royalties paid by McCord, but in fact indicated the contrary.

■ As a matter of law, the agreement cannot be construed to effect an accord and satisfaction, a waiver, or an estoppel. Therefore, since these requested special issues were not supported by the evidence, they were properly refused by the trial court.

■ The requested issue on laches was also properly refused. It improperly assumes London changed her legal position in good faith while inquiring if the Merrimans unreasonably delayed bringing their ratification claim. The special issue was properly refused for assuming a material fact. *See Placencio*, 724 S.W.2d at 21. Moreover, we do not find the equitable doctrine of laches to be applicable here. The Merrimans brought suit one year after the well was drilled, then amended their petition four years later to allege an alternative theory. This does not amount to an unreasonable delay in bringing a claim. We overrule London's fourth point.

■ London's fifth and final point of error avers that the trial court erroneously awarded pre- and post-judgment interest on the royalty monies, which had been deposited in the court's registry pending outcome of the trial. The interest is to be paid out of the deposited money as well. London has waived this error by failing to point it out to the trial court. Tex.R.App.P. 52. We overrule London's last point of error.

The McCord Exploration Co. has also perfected an appeal. Although the judgment is nominally against McCord, it is payable out of the royalties deposited with the court, in which McCord has no interest. However, since the Merrimans were also successful on their cause of action against McCord for breach of a duty to pool royalty interests, although the Merrimans elected to take judgment on the alternate theory, McCord has attacked the breach of duty theory of recovery in the event this Court reverses the ratification theory of recovery. Since we have sustained the judgment, McCord's points of error are overruled as not controlling. Tex.R.App.P. 81.

The judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

■ Both Dorothy London and McCord Exploration Company have filed motions for rehearing. McCord complains that we should not have assessed costs against it since its appeal was made moot as a result of our affirmance on the point of error London raised, as we noted in our original opinion. We agree with McCord and sustain its point of error on rehearing. Costs are hereby assessed solely against the unsuccessful appellant, London.

London's rehearing points of error reiterate her points on original submission. We have carefully reconsidered our original holding and conclude that the case was correctly decided. We overrule London's points of error on rehearing.

Appellants' motions for rehearing are GRANTED IN PART AND OVERRULED IN PART.

## OPINION ON DOROTHY LONDON'S SECOND MOTION FOR REHEARING

Dorothy London advances two additional points of error in her second motion for

rehearing. These are merely rewordings of her prior seven rehearing points of error.

However, London also advances a policy argument that this Court's decision will "adversely affect oil and gas leases throughout the State in which the parties have used the form lease in question." She now raises this matter for the first time, far too late for review. Moreover, we are unconvinced by her argument, unsupported by authorities. We overrule all of appellant's points.